Statement of Facts.

## STATE OF OREGON, RESPONDENT, *v.* C. G. GLASS, APPELLANT.

INSTRUCTIONS—DEGREE OF CERTAINTY WITH WHICH THE OFFENSE MUST BE SHOWN.—A refusal to instruct the jury that "the hypothesis contended for must be established to an absolute moral certainty, to the entire exclusion of any other hypothesis being true, or the jury must find the defendant not guilty," is not error. The law in criminal cases does not require such certainty as precludes the possibility of doubt. It is sufficient if the guilt of the accused be established "beyond a reasonable doubt."

IDEM—EACH NECESSARY FACT MUST BE ESTABLISHED.—Each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt.

IDEM—WHEN THERE IS NO TESTIMONY.—The court may refuse to instruct the jury when there is no testimony to which such instructions can apply.

TESTIMONY—IMMATERIAL FACT.—Where the crime charged is manslaughter, committed by attempting to procure abortion, it is immaterial whether deceased, prior to the commission of the crime, made an attempt upon herself or not, unless such attempt contributed to her death.

IDEM—REPRESENTATIONS OF A SICK PERSON.—Representations of a sick person as to the nature of the malady or bodily feelings under which he is suffering, if made to a medical attendant, are always received as original evidence.

IDEM—OPINIONS OF MEDICAL EXPERTS—FORM OF INTERROGATORIES.—Opinions of medical men as to the cause of death may be given. The form of the interrogatory is a question addressed to the discretion of the court, subject to such considerations as the nature of the particular matter under examination and the character and ability of the witnesses.

RES GESTÆ.—Declarations, to become part of the *res gestæ*, must have been made at the time of the act done which they are supposed to characterize.

APPEAL from Multnomah County.

The appellant, a physician, was indicted jointly with one Charles Mealey for the crime of manslaughter in producing abortion, committed on the 25th day of October, 1873, by administering drugs and medicines to, and by the use of instruments upon one Mary E. Hardman, a single woman, pregnant with child, by which means the death of the said Mary was produced. Separate trials having been granted, he was tried in the Circuit Court for Multnomah County in November, 1873, convicted and sentenced to five years' im-

prisonment; from which judgment he appeals to this Court. The errors relied upon in the appeal are as follows:

1. In admitting the testimony of physicians as to what deceased did and said to them concerning her pregnancy.

2. In admitting the testimony of a medical witness to prove that deceased died from hemorrhage caused by the removal of a fœtus.

3. In refusing to admit the testimony of the wife of defendant Mealey as to statements made by her husband to her at the time he started with deceased to go to Portland, concerning the object of their journey.

4. In refusing to instruct the jury—First. That the hypothesis contended for by the prosecution must be established to an absolute moral certainty, to the entire exclusion of any rational probability of any other hypothesis being true, or the jury must find the defendant not guilty. Second. In order to convict the defendant upon the evidence of circumstances, it is necessary not only that all the circumstances concur to show that he committed the crime charged, but that they are all inconsistent with any other rational conclusion.

5. Counsel for defendant asked the court to instruct the jury that if they "believe from the evidence that the child may have died or been killed in the womb of the deceased without any act or assistance on the part of the defendant, and defendant may have injured deceased, and bruised or wounded her womb with instruments or otherwise, while in good faith endeavoring to assist nature in the delivery of such dead child, or in the delivery of the afterbirth of such dead child, then the jury must acquit, and the State must show beyond a reasonable doubt that none of these hypotheses may be true, to convict." The court refused to give that part of the above instruction which follows the word "acquit." The rest was given.

6. That the court erred in instructing the jury that if defendant either used means himself to destroy the child, when it was not necessary to save the life of deceased, or advised, counseled, aided or assisted deceased to do so, "and thereby caused her death, the mere fact that the de-

ceased might have done the act or used the means herself, or even that she did use the means with her own hands, would not exonerate the defendant;" that if he advised, aided or assisted the deceased in committing the crime he is to be deemed a principal. *

7. That the court erred in refusing to instruct the jury that if deceased "had formed and expressed an intention to relieve herself of her pregnancy, even at the risk of her life, and that before or after coming to stop with defendant she may have endeavored to carry such design into effect without defendant's knowledge or acquaintance, they must find defendant not guilty."

8. That the court erred in refusing to instruct the jury that the declarations of standard medical books as to the effect which may or will be produced by a given medicine or drug is entitled to more weight "than opinions of medical men who admit in their evidence that they have never used such medicine in the course of their practice, and have little or no practical experience or observation as to the effect of such medicine."

9. That the court erred in refusing to instruct the jury that if they find that the womb of deceased was wounded in her lifetime, and believe that such wounds may have been inflicted in good faith in the effort to assist the delivery of a child dead in the womb, or in the effort to deliver an adhering afterbirth, after the birth of a stillborn child, then the jury must acquit.

10. That the court erred in instructing the jury that if the defendant took deceased in his charge, and continued to treat her with the intention not to destroy the child, and never intended to destroy the child, he is innocent; but that if he took her in charge intending to produce an abortion, or if, afterwards, at her solicitation or otherwise, he determined to destroy the child by bringing on premature labor, in either case, if he used any means with intent to destroy the child when it was not necessary to preserve the life of the mother, the criminal intent existed; and that, if the defendant used means which resulted in the death of the mother, and used them with the intent to destroy the child

when such destruction was not necessary, the criminal motive existed, which is an essential ingredient of the crime.

*Thayer & Williams*, for Appellant.

If the State was entitled to inquire concerning the application of deceased to physicians, it was only entitled to what she did and said, and it was error to allow witnesses to state what they understood to be the subject-matter of the application. (9 Cush. 36–39; Taylor on Evidence, § 524.)

Acts and declarations of a third party "cannot be received as evidence unless the principal act which they accompany and to which they relate, is itself material to the issue to be submitted to the jury; nor unless the declarations were made at the time the principal act was done; nor unless they were of a character to explain that act or to unfold its true nature and quality, as they are only admissible as incident to the principal act, and because they are a part of it and are necessary to explain and define its true character. (34 Me. 312; 19 Conn. 269; 10 N. Y. 210; 3 Conn. 250; 4 Green, 556; 7 Cush. 586; 9 Gray, 245.)

The cause of deceased's death, whether by the use of drugs or medicines, was a question for the jury. The professional witness is never allowed to give his opinion upon the principal question in dispute. (10 Am. Law Reg., N. S. 594.)

The prosecution having shown that deceased was at the house of Mealey; that she was pregnant; that Mealey started with her from his house to go to Portland, October 5, 1873, and their conduct on their way to and after their arrival in Portland, it was admissible for defendant to prove Mealey's declarations made to his wife at the time he and deceased started for Portland, touching the object of the journey. "A person's contemporary declarations accord with his intentions." (1 Phillips on Ev. 190, 191; 54 Ill. 402; 1 Greenl. on Ev., § 108; 7 English R. (Ark.) 806–7; 4 Washington C. C. 729–32; *Little* v. *Sessions*, 9 N. H. 271.)

The degree of certainty with which the crime is shown is correctly stated in the first instruction referred to in the fourth assignment of errors. (*People* v. *Strong*, 30 Cal. 154.)

It is necessary not only that all the circumstances concur to show that defendant committed the crime charged, but that they are all inconsistent with any other rational conclusion. (Starkie on Ev. 743, 754; 3 Greenl. on Ev. 137; 32 Cal. 215; 39 Cal. 326, 333; Burrill on Cir. Ev. 735–36.)

To refuse the entire instruction referred to in the fifth assignment of errors is to refuse the defendant the benefit of a reasonable doubt, which the law always allows. (Burrill on Cir. Ev. 137; Starkie on Ev. 757–9; ·25 Miss. 584–9; 39 Cal. 332.)

There was no evidence whatever that defendant ever advised, aided or assisted any other person in the act charged as a crime. It was error in the court to instruct the jury upon a state of facts concerning which there had been no evidence introduced or offered. (20 Howard U. S. 252–4; *Goodman* v. *Simon,* Id. 359; 9 Wallace, 553; 3 Bush. (Ky.) 32; 39 Cal. 332.)

It imposes upon defendant the burden of proving that the act was necessary to save the life of the mother. If a physician honestly *believes,* under circumstances calculated to produce such belief in a competent person, that the act was necessary, the law will hold him guiltless, though it should turn out that he was mistaken. The court having given this instruction in connection with that referred to in the fifth assignment of errors, with which it had no logical connection, such fact had a tendency to draw the mind of the jury away from the view desired to be presented by the former instruction. (37 Geo. 289.)

· If the jury found that defendant used means to destroy the child when it was not necessary to do so in order to save the mother's life, they are not bound therefrom to believe that a criminal intent existed. The danger may not in fact exist, yet a physician honestly believing it necessary to destroy the child to preserve the life of its mother, may do so and not be guilty of any crime. The court should have left the question of intent to the jury. (Civ. Code, § 835; 34 N. J. Law R. (5 Vroom), 416, 417; 5 Barbour, 204.)

There was no law to compel the State to produce the preserved parts of the uterus. A medical witness for

the State described its condition without producing it. The counsel for defendant had the right to argue to the jury the effect of its non-production. (Civ. Code, Subd. 7, Sec. 835; Laws 1865, Sec. 198, p. 37.)

*George H. Durham, Prosecuting Attorney, H. Y. Thompson and W. H. Effinger,* for Respondent.

The last half of the instruction referred to in the first assignment of error states the true rule. The State is not required to establish its theory to an absolute moral certainty. The testimony must prove to a moral certainty the guilt of the accused, and must exclude a reasonable doubt.

The second instruction in the third assignment of error was properly rejected. While all the circumstances, as a whole, must be inconsistent with any other rational conclusion than that of guilt, yet it is not true that each single isolated fact must tend to show guilt. (3 Greenl. 7th ed., p. 36, note 2; *State* v. *Webster,* 5 Cush.)

The court in another part of the charge gave the substance of these and the two following rejected instructions. The court is not required to repeat instructions already given. (1 Whart., Sec. 743.)

The fact that deceased may have designed or attempted to relieve herself of pregnancy, or may have inflicted wounds upon herself to produce abortion without defendant's knowledge, cannot exonerate the defendant, unless such attempts or wounds were the cause of her death.

Medical works cannot be used as testimony, and the court could not instruct the jury to discriminate between the declarations of such books and the testimony of medical experts. (1 Whart., Sec. 50.)

As to the value of medical testimony. (1 Whart., Sec. 47.)

Declarations of Mealey, made to his wife before starting for Portland, are not part of the *res gestæ.* (1 Greenl., Sec. 108.)

Declarations of deceased, made to her medical advisers, are competent to prove her pregnancy.

By the Court, MOSHER, J.:

The questions upon which the Court is called to pass, arise upon the admission of testimony and the instructions given and refused by the court below. I will consider these in the order in which they appear in the bill of exceptions.

Mrs. Dr. Thompson and Dr. Hanchett, being called on the part of the State, testified that the deceased had applied to each of them on the subject of her pregnancy. To this evidence the defendant excepted.

In order to sustain the indictment, it became necessary for the State to establish the fact of the pregnancy of the deceased at the time she went to Glass's house. The repre-sentations of a sick person, of the nature of the malady or the bodily feelings under which he is laboring at the time, especially if made to a medical attendant, are always received as original evidence.

As stated in the case in 9 Cushing, cited by defendant, the *res gestæ* are different in different cases; and it is not perhaps possible to frame any definition which would embrace all the various cases which may arise in practice. The statements of Mary Hardman, made to her physician concerning her condition, are free from those objections which usually apply to the admission of hearsay. They were in the nature of a confession. They were made against every possible inducement to suppress, conceal or distort the truth; when modesty and shame protested against their utterance, and when the perils of her situation persuaded her to speak. It would be impossible not to distinguish a case of this class from those referred to in the cases cited by defendant, where persons have sought to avail themselves of their own declarations to influence verdicts in which they had a pecuniary interest.

Dr. Watkinds, having testified that his examination of the uterus was sufficient to enable him to tell whether the deceased died from hemorrhage or other causes, was asked the question, "What, in your opinion, caused the death of the person from whom the uterus was taken?" The witness answered, "She died from hemorrhage caused by the re-

moval of a fœtus." This question was objected to, for the
reason that the answer would involve the point which the
jury had to determine. We think the objection not well
taken. In order to ascertain the guilt or innocence of the
defendant, it was necessary to ascertain the cause of the
death.

It is true that general opinion of scientific men is regarded
by some writers as a very unsatisfactory kind of evidence,
and judges in many cases have received it with the utmost
caution, but no inflexible rule has ever been laid down upon
the subject. It has been truly said that scientific evidence
is generally a matter of opinion, and a form of questions
calculated to exclude opinions will often have the effect to
destroy this class of evidence altogether. The objection
urged to scientific testimony is not so much to the form of
the examination as to the uncertainty of scientific tests. In
a large number of cases cited in Wills on Circumstantial
Evidence, the opinions of medical witnesses were received.
The better opinion seems to be that the form of the inter-
rogatory is a question addressed to the discretion of the
court, subject to such considerations as the nature of the
particular matter under examination, and the character and
ability of the witnesses. It appears that the testimony in
question was but a small part of the expert testimony going
to show the causes of the death. A number of medical
men, whose character and ability are unquestioned, testified
without objection to particular facts from which the jury
could infer the causes of death. Some of these witnesses
had assisted at the post-mortem examination of deceased,
others had subjected the uterus to careful microscopic ex-
aminations, and their means for becoming acquainted with
all the facts accessible in a case of this kind were ample.

On the trial the defense called Mrs. Mealey, wife of
Charles Mealey, who was jointly indicted with defendant,
and offered to prove statements made by Mealey at the time
of leaving Albany with deceased, as to his purpose in going
to Portland. This testimony was objected to, and the ob-
jection, we think, properly sustained. The appellant had
obtained a separate trial, and we are unable to see how his

case could be in anywise affected by proving Mealey's decla-
rations of his intentions at some time previous to any meet-
ing between them.   "Declarations to become part of the
*res gestæ* must have been made at the time of the act done
which they are supposed to characterize."  (1 Greenleaf, note
1, § 108.)

Mealey's declarations made to his wife prior to his meet-
ing with the defendant and to the performance of the act
complained of, have no connection with that fact, which is
the principal fact under investigation.   These declarations
are removed to a remote distance from the principal fact,
and are separated from it by a number of circumstances
and hypotheses having a doubtful bearing upon the main
question.   They were not part of the *res gestæ*, and were
therefore properly excluded.   The condition of deceased
as to pregnancy was a proper subject of inquiry.   If
she left Albany to go to Portland, intending to employ a
physician to procure an abortion, it was proper that that
fact should go to the jury for the purpose of showing her
pregnancy.   This evidence was not objected to on the trial,
and if liable to objection, it is too late to raise the objec-
tion now.

The court refused to instruct the jury that "the hypoth-
esis contended for by the prosecution must be established
to an absolute moral certainty, to the entire exclusion of
any other hypothesis being true, or the jury must find the
defendant not guilty."   The instruction was properly refused.
Absolute moral certainty is not attainable by the human
mind.   It is a well-understood and long-established rule,
that in criminal cases the guilt of the accused must be estab-
lished "beyond a reasonable doubt."   Absolute moral cer-
tainty excludes not only reasonable doubt, but all doubt.
It describes a fixed and uncompromising attitude of the
mind, of which men are not capable in any of the situa-
tions in life.   It means such a degree of certainty as pre-
cludes the possibility of error or mistake, and as presup-
poses the infallibility of witnesses and jurors.   It imposes
such conditions upon the administration of justice as would
make the punishment of crime impossible, and the existence

of criminal courts useless.   The law upon this subject, as
laid down by the court, is contained in the three following
instructions:

"It is not sufficient that the circumstances proved, coin-
cided with, account for, and therefore render probable, the
hypothesis sought to be established by the prosecution,
but they must exclude to a moral certainty every other hy-
pothesis but the single one of guilt, or the jury must find
the defendant not guilty."

"When a criminal charge is to be proved by circumstan-
tial evidence, the proof ought to be not only consistent with
the prisoner's guilt, but inconsistent with every other
rational conclusion."

"Circumstantial evidence, to be sufficient for a convic-
tion in this case, ought to be of a conclusive tendency;
that is, its tendency ought to be, not only to convince the
minds of the jury of the guilt of the defendant, but to ex-
clude the supposition that the deceased destroyed her own
life, either directly or indirectly, as the result of an abor-
tion produced by herself."

We are satisfied that the rule is here stated as strongly in
defendant's favor as the law will permit.

The court was asked to instruct the jury that all the cir-
cumstances, in the chain of the State's evidence, must con-
cur in showing defendant's guilt.   The true rule was un-
doubtedly laid down in the case of *Commonwealth* v. *Webster*
(5 Cush. 296, 313, 317 and 319).   Each fact necessary to
the conclusion sought to be established, must be proved
by competent evidence, beyond a reasonable doubt.   It is
only required that "the circumstances, *taken together*, must
be of a conclusive nature, and leading on the whole to a satis-
factory conclusion and producing in effect a reasonable and
moral certainty that the accused committed the offense
charged."

In *Summer* v. *The State* (5 Black, 579), it was said that
if the jurors have a reasonable doubt as to any one of the
circumstances in the chain of evidence, that one circum-
stance ought not to have any influence in making up their
verdict.   The jury may exclude any fact from their consid-

eration, and it is sufficient, if from the facts which are considered, their minds are drawn to conclude, to a reasonable and moral certainty, that the defendant is guilty. Nor does there appear to be any material difference between the instructions asked for and those given. The jury were instructed that to establish a charge, by circumstantial evidence, it was necessary that the proof should not only be consistent with the prisoner's guilt, but inconsistent with his innocence. This language would not have been strengthened had the court said that *all* the circumstances necessary to the conclusions sought to be established must be consistent with the hypothesis of guilt and inconsistent with that of innocence. If a single material fact, "or necessary circumstance," remained unproven, or having been proven, was inconsistent with the theory of guilt, the crime was certainly not proven with that certainty which the law requires and which the instructions given required.

The court instructed the jury that if they believed, from the evidence, "that the child may have died, or been killed, in the womb of deceased, without any act or assistance on the part of the defendant, and defendant may have injured deceased and wounded or bruised her womb with instruments or otherwise, while in good faith endeavoring to assist nature in the delivery of such dead child, or in the delivery of the afterbirth of such dead child, then the jury must acquit." It is insisted, by defendant, that it should not have refused to add to this instruction the words, "And the State must show, beyond a reasonable doubt, that none of these hypotheses may be true, to convict," as it was requested to do by defendant's counsel. To say that the hypothesis consistent with innocence *may be true*, contemplates the merest possibility of its truth, however remote, and it is equivalent to saying, "If you find there is a possibility of the innocence of the defendant, he is entitled to an acquittal." The question was not, *may* either of these hypotheses be true, or, in other words, is it possible for any of them to be true. The real question was, are you satisfied, beyond a reasonable doubt, that the hypothesis of the prosecution is the true one?

The instruction as given by the court is open to the objection which I have just considered, and it substantially gave to the defendant the benefit of a possibility of innocence by instructing the jury to acquit if they found that the child *may* have died without defendant's act, or that he *may* have injured deceased while in good faith endeavoring to assist nature in the delivery of the child. The law does not decide upon possibilities, but upon such probabilities as appear from the facts, judging by human experience, to be reasonable, and as leave the mind free from reasonable doubt.

It is urged by the defendant that there was no evidence whatever to the effect that defendant advised, aided or assisted any other person in the commission of the crime, and that the court had no right to instruct the jury upon a state of facts which did not exist. The evidence, as disclosed by the record, was circumstantial, and the jury might infer from it either that defendant performed the act charged as constituting the crime, with his own hand, or that he aided or encouraged deceased in doing it. The instruction was, therefore, proper. It is further urged that it justified the conviction of the defendant upon proof that the act charged was not necessary to preserve the life of the mother, whereas he ought not to be convicted if he performed the act believing, under appearances that would ordinarily produce such a belief in a competent person, that it was necessary to preserve the life of the mother. This instruction describes the offense precisely as the statute describes it. The real point to which the minds of the jury were directed by it is that just examined, to wit, that he who aids or encourages the commission of a crime is as responsible as though he committed it with his own hands. The objection, however, having been made to other instructions of the court below, will be examined.

The guilty intent of defendant is presumed if the statutory ingredients of the crime are shown. The mind of man can only be explored by weighing his conduct. It devolved upon the State to show that the removal of the fœtus was not necessary to preserve the life of deceased, and the de-

gree of certainty with which this is required to be shown is such that no competent person can be presumed to have believed the act necessary. In this case, had the jury found that the circumstances were such as to induce in a competent person a belief that the removal of the fœtus was necessary, or had the testimony left that fact in doubt, this would have been sufficient to create a reasonable doubt in their own minds as to the necessity of the act, and the prisoner must have been acquitted.

A case might arise where there were circumstances at the time of treatment calculated to lead to a conclusion which subsequent developments would show was erroneous; but this is not such a case; and the court may refuse to instruct the jury where there is no testimony to which such instruction can apply. There was no attempt made to show, nor was there anything tending to show, that the act charged as a crime was, or appeared to be, necessary to preserve the life of the deceased. The theory of the defense was, that defendant had no agency in the removal of the fœtus, and not that its removal was, or was thought to be, necessary to save the life of the mother. This is shown by the testimony contained in the transcript, where it is attempted to be shown that deceased procured her own death by the use of drugs prior to her meeting with defendant. More than this, every fact relied upon by the prosecution to show the act unnecessary was within the reach of defendant, if he is a competent physician, at the time he treated deceased.

The court was asked to instruct the jury that if they found that deceased had formed and expressed a design to relieve herself of her pregnancy, at the risk of her life, and that, before or after coming to stop with defendant, she may have endeavored to carry such design into effect without defendant's knowledge or acquiescence, they must find defendant not guilty. Under such an instruction, the jury would have been precluded from finding the defendant guilty, however conclusive the proof of guilt might be, by proof of an attempt by deceased, at some prior time, to commit the crime. It is immaterial whether deceased, prior to the commission of the crime, made an attempt upon her-

self or not, unless such an attempt contributed to her death.

Counsel for defendant asked the court to instruct the jury that the declarations of standard medical books in reference to the effect of certain drugs, were entitled to more respect than the opinions of medical men who admit that they never used such drugs. There is nothing to show that medical books were offered in evidence.

Other grounds of error assigned in the bill of exceptions were not insisted upon. The charge and rulings as a whole were a fair exposition of the law governing in this class of cases, and the prisoner does not appear to have suffered in any of his substantial rights. It was said by Lord Kenyon that "the natural leaning of the mind is in favor of prisoners; and in the mild manner in which the laws of this country are administered it has been a subject of complaint that the judges have given way too easily to formal objections in behalf of prisoners," and this remark applies with peculiar force to our own country and times.

In the language of Mr. Chitty, "in criminal cases, where the public security is so deeply interested in the prompt execution of justice, it seems the minor consideration should give way to the greater, and technical objections be overlooked, rather than the ends of society defeated."

We are of opinion that there was no error which could have prejudiced the defendant, and the judgment of the court below must be affirmed.