*JOHN W. MARTIN, ADM'R, ET AL. v. A. W. TRAIN, EX'R, ET AL.

DEBT DUE FROM ADMINISTRATOR IS ASSETS, ALTHOUGH CREATED AFTER DECEDENT'S DEATH.
H. was appointed administrator *de bonis non* with the will annexed of the estate of B.,
deceased. At the time of his appointment he was indebted to the estate upon a promis-
sory note executed by him to the former executors of B., upon exceptions to the final
account of H., claiming that he had omitted to charge himself with such debt: Held,
that the debt became assets in his hands as such administrator under sec. 6069 of the
Statutes, although the debt was created after the death of the testator.

Error to the Court of Common Pleas of Muskingum county.

ALBAUGH, J.

　　In 1849, Benjamin Blandy died, leaving a will by which he disposed of all his property
to his two sons, Charles and Henry, executors in trust for certain purposes therein named,
among which he directed that a certain sum of money, belonging to his estate, be set apart
and loaned and kept at interest for the purpose of paying annuities created by the will to
two of his daughters. The executors entered upon the discharge of their trust, and in 1852
loaned H. & F. Blandy, a partnership firm, composed of Henry, one of the executors, and
Fred., one of the sons, the sum of $5,275.00, for which they executed their promissory note,
signed H. & F. Blandy, payable to Charles Blandy and Henry Blandy as executors of the
will of Benjamin Blandy, deceased, in twelve months after date, with interest at ten per
cent. In 1879, Henry died, and a short time thereafter, Charles, the surviving executor,
resigned, and Fred. was appointed administrator *de bonis non* with the will annexed of his
father's estate. After the death of Henry, an inventory and appraisement was taken of the
assets and liabilities of the partnership, and Fred., the surviving partner, took the assets and
assumed the liabilities of the firm, among which was the note in controversy.

　　In 1883, Fred. died, having appointed A. W. Train his executor, who filed a final
account of his testator as administrator *de bonis non*. After the death of Fred., John W.
Martin was appointed administrator *de bonis non* with the will annexed of Benjamin Blandy,
who, with Henrietta Garabrant, a daughter and legatee under the will of Benjamin Blandy,
filed exceptions to the final account as rendered by A. W. Train, his executor. The excep-
tion among other things alleged that Fred. Blandy, as administrator *de bonis non*, was not
charged in the account with the amount of the note and interest executed by him and Henry
to the executors of Benjamin Blandy.

　　The exceptions were overruled, and an appeal was taken. The court of common pleas
upon the trial found against the executors, and a petition in error is filed in this court to
reverse the judgment.

　　It is conceded that the loan to Henry and Charles Blandy by the executors,
for which the promissory note was executed, was made under authority and by
direction of the will of the testator, and that the note was in the hands of the
executor at the time of the appointment of Fred, as administrator *de bonis non*,
and came to his possession. It follows, therefore, that having been appointed to
fill the place of the former executors, he is their successor in the execution of the
trust, and is entitled to all the assets remaining unadministered, and is clothed
with all the rights and powers which they possessed under the law and the will
of the testator, and was charged with the collection of this note as well as all other
claims due the estate which had not been collected by his predecessors.

　　The question then presented is, whether this note is such an indebtedness
or liability to the estate, as should be considered assets in the hands of Fred.
Blandy as such administrator under sec. 6069 Rev. Stat., which provides that

------

*This decision is cited and qualified, holding rule not without exception, in Brown v. Harshman, 6 Circ.
Dec. 1u; also in McCoy v. Allen, 6 Circ. Dec., 659.

"the naming of any person executor in a will, shall not operate as a discharge of any just claim which the testator had against such executor, but such claim shall be included among the credits and other effects of the deceased in the inventory, and the executor shall be liable for the same as so much money in his hands at the time such debt or demand becomes due, and shall distribute the same in payment of debts and legacies." While this section literally has application to the appointment of an executor who is a debtor of the testator, it is well settled that it is applicable to the appointment of an administrator of an estate who is the debtor of the decedent. Also, it is held in Raab's Estate, 16 O. S. 273, that when a debtor is appointed administrator of the estate of his creditor, the debt becomes assets in his hands, and on exception to his final account, claiming that he has failed to charge himself with such debt, the probate court may hear evidence and determine the validity of such claim and the amount of such debt."

On behalf of the administrator *de bonis non* it is contended that the liability upon the note having been created after the death of Benjamin Blandy, the statute does not apply; in other words, that the statute has reference only to the debts which existed at the time of the death of his creditor; and counsel seem to rely in support of this view upon the case of Shields v. O'Dell, 27 O. S. 398. In this case the executor died owing the estate a large sum of money. His surety upon his bond was appointed administrator *de bonis non* with the will annexed, and the question was whether his liability upon the bond of the executor, for this money, was a debt which the administrator *de bonis non* should charge himself with as assets in his hands. The learned judge who delivered the opinion in the case, after citing the statute upon the subject, and citing several cases decided by the supreme court, says:

"As to the statute, it will be observed that it refers to a claim which the testator had against his executor; not to a claim which his estate might hereafter have at some time in the future. This claim is also to be included in the inventory, showing that it must have been a claim at the time the inventory was made, or at the death of the testator. An examination of the Ohio cases cited shows that the claims therein in question were existing during the lifetime of the testator or intestate. Indeed, the very origin of the idea that the debt was assets in the hands of the administrator or executor, shows that it must have been a claim of this kind."

An examination of this kind will show that the decision is not based upon the ground that the debt was created after the death of the testator. The sole ground upon which the court held that the debt was not assets is, that the liability of the administrator upon the bond of the executor was a conditional liability only, and not a debt that would become assets in his hands. The propositions decided were:

*First*—"The principle that the appointment of a debtor as administrator converts the debt into assets in his hands to be accounted for, does not apply to one who is only conditionally liable to the estate.

*Second*—The appointment of an administrator *de bonis non* with the will annexed of one who was surety on the bond of the previous executor, does not make a debt due the estate from such executor assets in the hands of such administrator by reason of his suretyship."

It might also be observed that the question whether a debt created after the death of the decedent would become assets in the hands of the debtor who was appointed administrator, was not made or decided in any of the cases cited in this decision. The rule, that where a debtor becomes the administrator or executor of the creditor, the debt becomes assets in the hands of the debtor, was well settled by decisions in this state long before the act of 1840, in which the same doctrine was declared by statute, and the principle upon which these decisions are uniformly based is, that the debt is merely a right to recover the amount by way of action, and as an executor or administrator cannot maintain an action against himself, his appointment by the creditor to that office, suspends the action for the debt, and when a personal action is once suspended by the

voluntary act of the party entitled to it, it is forever gone and discharged. The chose in action becomes converted into a chose in possession, and is transmitted by the mere operation of law, which is equivalent to judgment and execution. The debt is thus satisfied. The instant administration is granted, the administrator being the person to pay, and also to receive payment, is considered as having paid the debt, and as holding the amount in his hands as assets. Bigelow v. Bigelow, 4 O. 138; Hall v. Pratt, 5 O. 73; Tracy v. Card, 2 O. S. 431.

In this case Fred. Blandy, having assumed the payment of the note after the death of the other member of the firm, it became his individual liability to his father's estate, and he was to that extent the debtor of the estate at the time he was appoined administrator *de bonis non.*

While it is true that the debt must have existed at the time the administrator was appointed and accepted the trust in order that he may have knowledge of the consequence or legal effect of changing the nature of his liability, we do not see upon what principle the debt must have existed prior to the death of the decedent. The powers of the executors of Benjamin Blandy had ceased before the appointment of the administrator *de bonis non* with the will annexed. Being indebted to the estate at the time of his appointment, he became his own creditor, and the collection of the debt was necessarily suspended the same as it would be had the debt existed prior to the death of the decedent. We know of no remedy available to the estate by which the debt could have been collected while his appointment of administrator was in force, and it could not be collected after his appointment had terminated. If the debt had become assets in his hands, no act of the parties could turn them back to an obligation again, having voluntarily assumed the trust which prevented any one from bringing an action against him, and being unable to sue himself, he is considered as having paid the debt, and as holding the amount in his hands as assets belonging to the estate.

It is further said that the statute contemplates that the debt must be in existence when the inventory is filed, and must be included in the inventory, otherwise it is not converted into assets by operation of law, in the hands of the administrator. It is a sufficient answer to this to say that the administrator should charge himself in his account with everything which is properly assets belonging to the estate, even if not included in the inventory and the well known practice is, that if he fails to do so, or if funds come to his hands since the filing of the inventory, which are proper assets, the court will, upon exceptions to his account, order that he be charged therewith

The words of a remedial statute are to be construed largely and beneficially, so as to suppress the mischief and advance the remedy. It is by no means unusual in construing remedial statutes to extend the enacting words beyond their natural import in order to include cases which otherwise could not be reached. "It frequently becomes the duty of courts, in order to give effect to the manifest intentions of a statute, to restrain or qualify, or enlarge the ordinary meaning of the words used." Tracy v. Card, *supra.*

The rule under the common law was that where a debtor was appointed executor or administrator of the creditor, the debt became extinguished. This rule was changed by our supreme court in early cases, and afterward abrogated by statute. To hold that the debt must exist prior to the death of the decedent, would, in all cases like the present, defeat the very object in view when it was sought to establish a uniform rule upon the subject in order that the evils might be remedied which were made possible under the common law.

We are of opinion, therefore, that the judgment should be reversed and the cause remanded.