In a petition for rehearing counsel contend that the trial court erred in not instructing the jury fully upon the defense indicated in the defendant's testimony to the effect that a miscarriage *Page 791 
was imminent at the time the deceased consulted him and that the operation which he performed was necessary to save the life of the patient. It is said that the deceased might very easily have inflicted upon herself such a wound as would make it appear to the doctor that a miscarriage and curettage was imminently necessary and that a physician may not be held criminally responsible for an operation which he, in good faith and in the exercise of his best skill and understanding, believed to be necessary to save the patient's life. The assignment of error, in support of which this argument is advanced, is the refusal to give the following instruction: "You are further instructed that the burden is upon the state to negative that the defendant, in good faith and in the exercise of his best skill and understanding, believed it (the operation) was necessary to save the patient's life." The instruction given defined murder in the second degree as homicide "perpetrated wilfully, unlawfully and feloniously, without any design to effect death, by a person engaged in the commission of a felony . . . and if the felony charged is the felony of procuring an abortion, then it is murder in the second degree." This is substantially the definition contained in § 9462, Compiled Laws of 1913. In defining the felony the defendant was charged with being engaged in committing at the time of the acts resulting in the death of the deceased, the court said: "The state charges that the defendant in this case took the life, or caused the death, of one Freda Nadler, and destroyed her life when he was engaged in the commission of a felony, though he did not have any design to effect her death, and the state further charges that the felony which the defendant was engaged in committing on the said Freda Nadler was the felony of procuring an abortion. Now, Gentlemen of the Jury, every person who uses or employs any instrument or any other means whatsoever upon any pregnant woman, with the intent thereby to procure the miscarriage of such woman, unless the miscarriage is necessary to preserve her life, is guilty of a felony under our statutes, and if, while engaged in the commission of a felony, or as the direct result of the commission of said felony, he thereby destroys the life of the said pregnant woman he is guilty of murder in the second degree, even though he had no design or intent to cause her death." This instruction defines the *Page 792 
crime of procuring an abortion substantially in the language of § 9604 of the Compiled Laws of 1913.
From these two instructions, following as they do the statutory definitions of murder and of abortion, it is readily apparent that the giving of the instruction requested would involve the writing into the statutes of an exception to the effect that where a physician procures the miscarriage he shall not be criminally responsible if he in good faith believed his acts to be necessary. The statutes of some states embody such an exception. See 1 C.J. 322. In the absence of such an exception in the statute, however, either expressed or arising by fair implication, no such fact or circumstance excusing the act of a defendant is available as a defense. 1 C.J. 316. As above indicated our statute contains no express exception nor any language from which we think one may fairly be implied. If the law is to be established that a physician may not be punished for the procurement of an abortion, where he induces a miscarriage which is not necessary to save the life of the patient but which he nevertheless in good faith thinks is necessary, we think the existing statute must be modified. The standard by which to determine the necessity under the statute is not the good faith or bad faith of the physician, nor does it vary with the degree of skill which he possesses. It is the one standard of necessity. Upon the state rests the burden of proving beyond a reasonable doubt that no necessity existed. When this fact is thus proven, it is established that the operation is unlawful and, being performed voluntarily, an intent to perform the unnecessary operation must be ascribed. It is the general criminal intent that is important in such a case. The case is not an exception to the general rule which applies where one engages in a prohibited course of conduct. He must be presumed to have intended the consequences of his voluntary acts. It is this intent and not the specific intent of the individual in the particular case that evidences the criminal purpose. "The evil purpose need not be to break the law; it suffices if it is simply to do the thing which the law in fact forbids." 1 Bishop, Crim. Law, 9th ed. § 300. This criminal intent is supplied, prima facie, under our statute by the showing that the operation was in fact not necessary. As is well said by the supreme court of Oregon in the case of State v. Glass, 5 Or. 73, at page 85, "The guilty intent of the defendant is presumed, if the statutory ingredients *Page 793 
of the crime are shown. The mind of man can only be explored by weighing his conduct. It devolved upon the state to show that the removal of the fetus was not necessary to preserve the life of deceased, and the degree of certainty with which this is required to be shown is such that no competent person can be presumed to have believed the act necessary." In other words, the state must prove by evidence which convinces beyond a reasonable doubt that the operation was not necessary, and if the state sustains this burden the inference follows that no competent person could be presumed to have believed the act necessary, and the fact that the defendant might have thought it necessary neither negatives the criminal intent nor excuses the act.
The court having properly instructed the jury as to the ingredients of the offense in question and having placed upon the state the burden of proving the absence of necessity, we are of the opinion that it was not error to decline to give the requested instruction. This instruction would place upon the state the additional burden of proving that the defendant acted in bad faith and not in the exercise of his best skill and understanding; or that he did not believe the operation to be necessary. It was specifically held in the Oregon case of State v. Glass, supra, upon which counsel rely, that this burden could not properly be thrust upon the state, the court saying, in addition to what is above quoted, at page 85: "It is further urged that it (the instruction) justified the conviction of the defendant upon proof that the act charged was not necessary to preserve the life of the mother, whereas he ought not to be convicted if he performed the act believing, under appearances that would ordinarily produce such a belief in a competent person, that it was necessary to preserve the life of the mother. This instruction describes the offense precisely as the statute describes it."
The Iowa case of State v. Shoemaker, 157 Iowa, 176, 138 N.W. 381, is relied upon by the petitioner. In our view the case is not an authority in his favor. An examination of the opinion discloses that the woman upon whom the operation was performed testified as to her physical condition at the time of consulting the doctor and described symptoms strongly indicative of an impending miscarriage. The court set forth this testimony, as well as the testimony of the defendant, and concluded that the state had not sustained the burden of negativing *Page 794 
the necessity, saying that they were not ready to sanction a conviction without prima facie proof at least that the miscarriage attempted was not necessary to save life. The court apparently assumes that the burden of proof to negative the necessity was upon the state, with which holding we fully agree. But we find no substantial warrant in the opinion for the doctrine contended for that the burden was on the state to negative the good faith or the belief of the defendant that the operation was necessary to save the patient's life. The holding was that the evidence was insufficient to negative necessity.
We are of the opinion that the instruction requested neither embodies a correct statement of the substantive law defining the offense, nor a correct statement of the law with reference to the burden of proof. The instructions given being ample to define the offense with which the defendant was charged, and to place upon the state the burden of proving the various ingredients thereof beyond a reasonable doubt, with the alternative of a verdict of not guilty, there was no error in declining to give the requested instruction.
It is also urged in the petition that there are certain assignments of error with reference to rulings on evidence which were not covered in the original opinion. These assignments were not argued in the original brief and it is an elementary rule of practice in this court that assignments of error not argued are deemed waived and may not be urged for the first time upon petition for rehearing.
The petition is denied.
CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and JOHNSON, JJ., concur. *Page 795