[No. 65735-6-I. Division One. July 2, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES MASTER O'CAIN, *Appellant*.

230

*Oliver R. Davis* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Ann M. Summers, Deputy*, for respondent.

¶1 Dwyer, J. — United States Supreme Court precedent establishes that it is a defendant's obligation to raise at or before trial a Sixth Amendment confrontation clause objection to the admission of statements made by an absent witness. A failure to assert the right at or before trial results in the right being forgone. Here, James O'Cain was convicted of one count of assault in the second degree, one count of assault in the fourth degree, and one count of felony harassment, based in part upon out-of-court statements uttered by the victim, Sheila Robinson, to various medical personnel who treated Robinson for her injuries. O'Cain contends that his convictions must be reversed because the admission of Robinson's statements violated his right to confrontation under both the state and federal constitutions. He also claims that the trial record contains insufficient evidence of a communicated threat to kill to support the conviction of felony harassment.

¶2 Because O'Cain did not assert his confrontation clause objection at or before trial, he cannot obtain appellate relief on that claim. Furthermore, Robinson's statements were made for the purpose of obtaining medical treatment. Therefore, the statements are both nontestimonial and inherently reliable, thus implicating neither the federal constitution's Sixth Amendment nor article I, section 22 of our state constitution. However, because the evidence adduced at trial was insufficient to support O'Cain's felony harassment conviction, that conviction must be vacated.

I

¶3 On December 13, 2009, just before 11:00 p.m., Sheila Robinson placed a 911 call to the police. Robinson told the

operator that she had been in a fight with her boyfriend, "Master James O'Cain." She stated that O'Cain had "tried to kill" her, and that she had suffered cuts on her back, as well as other unspecified injuries. She told the operator that there was glass stuck in her back from "a little decorative thing on the table." Robinson repeatedly told the operator that O'Cain was still outside her apartment and attempting to regain entry. Near the end of the call, Robinson reported that O'Cain had left the area on foot.

¶4 Upon arriving at the scene, officers found O'Cain walking along the road near Robinson's apartment. O'Cain had minor scratches on his face and neck. O'Cain was taken into custody and charged with two counts of assault in the second degree and one count of felony harassment.

¶5 While in custody awaiting trial, O'Cain wrote several letters to Robinson in which he encouraged her not to appear as a witness at his trial.[1] O'Cain wrote that, "[a]t trial, if no one shows up, I go home." He explained that "no one can show up to that court date at trial, period. I mean, absolutely they cannot show at all. No show." He wrote that "the person cannot get in any real trouble behind [sic] not showing. Trust me." Based upon the existence of these letters, O'Cain was also charged with one count of tampering with a witness.

¶6 Robinson did not testify at O'Cain's trial. In lieu of live testimony from Robinson, the prosecution played a recording of the 911 call and introduced the testimony of several of the medical providers who treated Robinson following the attack. The physician's assistant who removed glass from Robinson's back testified that Robinson told him that she was thrown onto a glass table, that she had been "knocked out," and that she had been "choked." The emergency medical technician who transported Robinson to the hospital testified that Robinson told him that she had been

---

[1] In the letters, the writer refers to himself as "M" and "Master." A fingerprint analysis revealed prints matching O'Cain's on two of the letters.

"struck with a glass object." A nurse who treated Robinson at the hospital told jurors that Robinson stated to her that Robinson had been pushed, kicked, and choked by her boyfriend.

¶7 O'Cain did not object to the testimony of the medical personnel on confrontation clause grounds.[2] Indeed, defense counsel conceded that "Washington state courts have carved out an exception to *Crawford*[3] . . . that allows medical personnel to testify for purposes of treatment." However, counsel did object to these statements on the basis that, because O'Cain was not identified as the attacker in any of Robinson's statements to the medical providers, the statements were not relevant. This objection was overruled.

¶8 The jury convicted O'Cain of one count of assault in the second degree, one count of felony harassment, and one count of tampering with a witness. As to the second assault charge, the jury found O'Cain guilty of the lesser included offense of assault in the fourth degree. O'Cain was sentenced to 70 months of confinement.

¶9 O'Cain appeals.

II

¶10 In this appeal, O'Cain first seeks to challenge the admission of the statements made by Robinson to her various medical providers on federal confrontation clause grounds.[4] He did not raise such an objection at trial. Nevertheless, he asserts that he may do so for the first time on appeal. Our analysis of the controlling authority leads us to the conclusion that he is wrong.

¶11 If it is possible for jurisprudence to be in an uproar, the case law development of the Sixth Amendment confron-

---

[2] In contrast, O'Cain argued at length that admission of the 911 tape would violate his right to confrontation.

[3] *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[4] We engage in de novo review of alleged violations of the confrontation clause. *State v. Koslowski*, 166 Wn.2d 409, 417, 209 P.3d 479 (2009).

tation clause has been in the juristic version of such a state for the past eight years. In 2004, the United States Supreme Court issued its *Crawford* opinion, rendering much of what judges and lawyers thought they knew about the confrontation clause obsolete and opening for reexamination virtually everything else.

¶12 Over the intervening eight years, the Court has repeatedly revisited the confrontation clause. In the course of so doing, it has made clear that the right to confrontation must be asserted at or before trial or be lost.

¶13 To begin at the beginning, the confrontation clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend VI. The confrontation clause bars the admission of "testimonial" hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 53-54. The prosecution has the burden of establishing that statements are nontestimonial. *State v. Koslowski*, 166 Wn.2d 409, 417 n.3, 209 P.3d 479 (2009).

¶14 How does a defendant properly put the government to its burden? The defendant does so by asserting the right at trial.

¶15 Justice Scalia's opinion for the Court in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), makes this clear. In the *Melendez-Diaz* decision, the Court reviewed the introduction into evidence at trial of three "certificates of analysis," signed under oath by analysts employed by the Massachusetts Department of Public Health and stating that the substances tested by the analysts were "cocaine." 557 U.S. at 308. The Court held that the statements in these certificates were testimonial and that their admission violated the confrontation clause. In reaching this decision, the Court also made clear that a claim of error premised upon the confrontation clause must be asserted at or before trial or be lost. References to the defendant's obligation in this regard are made repeatedly

throughout the opinion. Indeed, the defendant's obligation in this regard is a key component of the Court's analysis.

¶16 Early in the opinion, in responding to an assertion made by a dissenting justice, the opinion states, "It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony *is* introduced must (if the defendant objects) be introduced live." *Melendez-Diaz*, 557 U.S. at 311 n.1. Discussion later in the opinion makes clear that the Court's emphasis on the defendant's burden—"if the defense objects"—was not mere surplussage but, instead, was crucial to its reasoning.

¶17 One of the key passages in the *Melendez-Diaz* opinion is its restatement of the law of confrontation, post-*Crawford*, and its interplay with its Sixth Amendment corollary, the compulsory process clause.

> The contrast between the text of the Confrontation Clause and the text of the adjacent Compulsory Process Clause confirms this analysis. While the Confrontation Clause guarantees a defendant the right to be confronted with the witnesses "against him," the Compulsory Process Clause guarantees a defendant the right to call witnesses "in his favor." U.S. Const., Amdt. 6. The text of the Amendment contemplates two classes of witnesses—those against the defendant and those in his favor. The prosecution *must* produce the former;[3] the defendant *may* call the latter. Contrary to respondent's assertion, there is not a third category of witnesses, helpful to the prosecution, but somehow immune from confrontation.

*Melendez-Diaz*, 557 U.S. at 313-14.

¶18 The Court's statement, quoted above, is clear, direct, and almost without qualification. It sets forth what the prosecution *must* do and contrasts it with that which the defendant *may* do. Its sole qualification is contained in footnote 3, which qualifies the prosecution's otherwise-mandatory obligation as follows:

The right to confrontation may, of course, be waived, including by failure to object to the offending evidence; and States may adopt procedural rules governing the exercise of such objections.

*Melendez-Diaz*, 557 U.S. at 314 n.3.

¶19  Justice Scalia's decision to include this statement as the sole qualification on the prosecution's obligation should not be ignored or dismissed by lower courts. His placement of this statement—by means of a footnote—in the midst of a key sentence setting forth the Court's holding on an important question of constitutional law was not happenstance. Moreover, the substance of the statement must be given effect. It sets forth two principles guiding confrontation clause analysis: (1) a defendant loses the right to confrontation by not objecting to the offending evidence and (2) states may—by adopting rules applicable to trial court proceedings—govern the means by which defendants may assert the right to confrontation.

¶20  Those were not, however, the *Melendez-Diaz* opinion's sole references to the defendant's obligation to assert—or lose—the confrontation right at trial. Toward the latter stages of the opinion, the Court repeatedly returns to the subject of the defendant's obligation to assert his confrontation right in the trial court as a premise underlying the soundness of its holding on the profound constitutional issue addressed. In the course of once again responding to an assertion contained in the dissenting opinion, Justice Scalia, on behalf of the Court, writes:

The dissent provides some back-of-the-envelope calculations regarding the number of court appearances that will result from today's ruling. [129 S. Ct.] at 2549-2550. Those numbers rely on various unfounded assumptions: that the prosecution will place into evidence a drug analysis certificate in every case; that the defendant will never stipulate to the nature of the controlled substance; *that even where no such stipulation is made, every defendant will object to the evidence or otherwise demand the appearance of the analyst.* These assumptions are wildly unrealistic, and, as discussed below, the figures they produce do not reflect what has in fact occurred in those

238

> jurisdictions that have already adopted the rule we announce today.

*Melendez-Diaz*, 557 U.S. at 325 n.10 (emphasis added). As is clear from the emphasized portion of the preceding quotation, the Court cited the defendant's obligation to assert, at or before trial, his confrontation right as a basis for discounting the dissent's criticism. In so doing, the Court again emphasized the importance of treating this obligation of the defendant as part and parcel of the very right itself.

¶21 But that was not all. In the final section of its *Melendez-Diaz* opinion, the Court's majority, in explaining the soundness of its holding, returns repeatedly to the defendant's obligation to timely assert the confrontation right. In discussing the utility of notice-and-demand statutes, whereby the prosecution gives pretrial notice of its intent to use documentary evidence (rather than live testimony) to prove up a particular fact, the Court approves of this procedure, which "permit[s] the defendant to assert (or forfeit by silence) his Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report." *Melendez-Diaz*, 557 U.S. at 326. Indeed, such statutes, in the Court's view, are not an unfair burden on the defendant but, rather, "empower a defendant to insist upon the analyst's appearance at trial." *Melendez-Diaz*, 557 U.S. at 326.

¶22 Again responding to the dissent's contention that the criminal justice system will be overburdened as a result of the *Melendez-Diaz* decision, Justice Scalia, in dismissing the dissent's criticism, refers again to the utility of notice-and-demand statutes and the obligations that they assign to the prosecution and the defendant, respectively.

> First, the dissent believes that those state statutes "requiring the defendant to give early notice of his intent to confront the analyst," are "burden-shifting statutes [that] may be invalidated by the Court's reasoning." [129 S. Ct.] at 2554, 2557-2558. That is not so. In their simplest form, notice-and-demand statutes require the prosecution to provide notice to the defen-

dant of its intent to use an analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial. Contrary to the dissent's perception, these statutes shift no burden whatever.

*Melendez-Diaz*, 557 U.S. at 326-27 (citations omitted).

¶23 Why is it that notice-and-demand statutes "shift no burden whatever"? It is because

[t]he defendant *always* has the burden of raising his Confrontation Clause objection; notice-and-demand statutes simply govern the *time* within which he must do so. States are free to adopt procedural rules governing objections.

*Melendez-Diaz*, 557 U.S. at 327.

¶24 A lot of importance is included within that last quotation. Most important is the clear statement that "[t]he defendant *always* has the burden of raising his Confrontation Clause objection." "Always" means always. It means every time. It means without exception. And it means always, every time, without exception, *in the trial court.*

¶25 Also included in the last-quoted excerpt from *Melendez-Diaz* is the statement that "States are free to adopt procedural rules governing objections." Thus, proper assertion of the right of confrontation is dependent on proper compliance with state-mandated trial procedures and evidentiary procedural rules—such as a rule requiring timely and specific objection.

¶26 Finally, the last-quoted excerpt references the states' abilities to adopt rules that "govern the *time* within which" a defendant may assert his confrontation right. That states may do so is again made clear in the very next passage of *Melendez-Diaz*:

It is common to require a defendant to exercise his rights under the Compulsory Process Clause in advance of trial, announcing his intent to present certain witnesses. *There is no conceivable reason why he cannot similarly be compelled to exercise his Confrontation Clause rights before trial.*

*Melendez-Diaz*, 557 U.S. at 327 (emphasis added) (citations omitted).

¶27 Thus, in *Melendez-Diaz*, the Supreme Court makes two things clear: (1) a defendant has the obligation to assert the right to confrontation at or before trial, in compliance with applicable trial court procedural rules and (2) this obligation is part and parcel of the confrontation right itself, the parameters of which are based upon—and dependent upon—defendants being held to their obligation of timely assertion. In short, the decision clearly establishes that, when a defendant's confrontation right is not timely asserted, it is lost.[5]

¶28 The Court continues to adhere to this view.[6] Last year, the Court had the opportunity to revisit its *Melendez-Diaz* decision in the context of a driving under the influence of intoxicants prosecution. In *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S. Ct. 2705, 2709, 180 L. Ed. 2d 610 (2011), the Supreme Court held that the introduction into evidence of a "forensic laboratory report certifying that Bullcoming's blood-alcohol concentration was well above the threshold for aggravated DWI [(driving while intoxicated)]" violated Bullcoming's confrontation right because the laboratory report was accompanied by the testimony of a laboratory

---

[5] Justice Scalia variously describes the right to confrontation as being "waived" by failure to object, *Melendez-Diaz*, 557 U.S. at 314 n.3, and being "forfeit[ed] by silence" where no timely assertion is made, 557 U.S. at 326. In other contexts, the distinction between "waiver" and "forfeiture" has been held to be of significance. Here, however, Justice Scalia, on behalf of the Court, uses the terms interchangeably. Legal scholars may choose to opine at length in scholarly journals on the propriety, or lack of same, of the interchangeable use of these terms. As judges, however, we need not express such angst over word choice. As a simple matter of constitutional jurisprudence, if the United States Supreme Court, in the confrontation clause context, assigns no significance to the traditional distinction between "waiver" and "forfeiture," then neither should we. To the extent that the Supreme Court uses the terms interchangeably, that is the law. Our role as state appellate judges is to follow constitutional law as set forth by the Supreme Court—not to quibble with its choice of verbs.

[6] Justice Scalia recently again used the term "forfeited" as synonymous with "waived." *See United States v. Jones*, ___ U.S. ___, 132 S. Ct. 945, 954, 181 L. Ed. 2d 911 (2012) ("We have no occasion to consider this argument. The Government did not raise it below, and the D.C. Circuit therefore did not address it. We consider the argument forfeited." (citation omitted)).

analyst who had neither written the report nor conducted the testing. 131 S. Ct. at 2711-12. Important to the Court's analysis was that Bullcoming timely objected at trial, on confrontation clause grounds, both to the testimony of the substituted analyst and to the introduction of the document. *Bullcoming*, 131 S. Ct. at 2712. Indeed, the Court took pains to note that Bullcoming did not object to the State's "failure to call" as a witness at trial either the laboratory intake employee (who received the blood sample upon presentation to the lab for testing) or the "reviewing analyst" (a supervisory laboratory employee who certified that the analyst was qualified to conduct the test) and that, as a result, no confrontation clause issue was presented as to those persons. *Bullcoming*, 131 S. Ct. at 2712 n.2.

¶29 Consistent with this observation, the Court, in the last section of the opinion, cites to and repeats *Melendez-Diaz*'s approval of notice-and-demand statutes that " 'permit the defendant to assert (or forfeit by silence) his Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report.' " *Bullcoming*, 131 S. Ct. at 2718 (quoting *Melendez-Diaz*, 557 U.S. at 326). Thus, once again, the United States Supreme Court made clear that the applicability and scope of the confrontation clause is predicated, at least in part, on its requirement that a confrontation clause objection be timely asserted—at or before trial—by the defendant.

¶30 The Supreme Court's fettering of a defendant's right to confrontation, as manifested in *Melendez-Diaz* and *Bullcoming*, is not without historical basis. Indeed, a defendant's Sixth Amendment right to confrontation has always been subject to limitations. In *Giles v. California*, 554 U.S. 353, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008), the Supreme Court—again in an opinion authored by Justice Scalia—discussed the doctrine of forfeiture by wrongdoing. The Court noted that the Sixth Amendment confrontation clause is " 'most naturally read as a reference to the right of confrontation at common law.' " *Giles*, 554 U.S. at 358

(quoting *Crawford*, 541 U.S. at 54). The Court then observed that

> [w]e have previously acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted. The first of these were declarations made by a speaker who was both on the brink of death and aware that he was dying. . . .
>
> A second common-law doctrine, which we will refer to as forfeiture by wrongdoing, permitted the introduction of statements of a witness who was "detained" or "kept away" by the "means or procurement" of the defendant.

*Giles*, 554 U.S. at 358-59 (citations omitted). The doctrine of forfeiture by wrongdoing, the Court explained, arose from common law policy concerns. "The absence of a forfeiture rule covering this sort of conduct would create an intolerable incentive for defendants to bribe, intimidate, or even kill witnesses against them." *Giles*, 554 U.S. at 365. "[I]n other words, it is grounded in 'the ability of courts to protect the integrity of their proceedings.' " *Giles*, 554 U.S. at 374 (quoting *Davis v. Washington*, 547 U.S. 813, 834, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)).[7] It is thus clear that, since the founding, the right of confrontation has not been absolute but, rather, has been subject to limitations necessary to protect the integrity of court proceedings.

¶31 As noted in *Melendez-Diaz*, "States may adopt procedural rules governing the exercise of such [confrontation clause] objections." 557 U.S. at 314 n.3; *accord State v. Dash*, 163 Wn. App. 63, 72, 259 P.3d 319 (2011).[8] Washington's

---

[7] The Washington Supreme Court had previously recognized the existence of this exception to the federal confrontation right: "[W]e will not allow Mason to complain that he was unable to confront Santoso when Mason bears responsibility for Santoso's unavailability." *State v. Mason*, 160 Wn.2d 910, 925, 162 P.3d 396 (2007) (applying doctrine of forfeiture by wrongdoing to defendant's Sixth Amendment confrontation clause claim).

[8] Indeed, the sound logic of requiring the interposition of a timely confrontation clause objection is underscored by the circumstances of this case. O'Cain was found guilty of tampering with a witness based upon letters that he sent to the victim, attempting to dissuade her from testifying against him. Although this

Evidence Rule (ER) 103 is one such rule. Pursuant to this rule of evidence, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless . . . a timely objection or motion to strike is made, stating the specific ground of objection." ER 103(a)(1). This rule protects the integrity of judicial proceedings by denying a defendant the opportunity to sit on his rights, bet on the verdict, and then, if the verdict is adverse, gain a retrial by asserting his rights for the first time on appeal.[9] The evidentiary rule is also consonant with the Supreme Court's discussion of a defendant's obligation to assert the confrontation right at or before trial, as expounded upon in *Melendez-Diaz* and *Bullcoming*.

¶32 Requiring the defendant to assert the confrontation right at trial is also consistent with other Sixth Amendment jurisprudence. Indeed, were this not the defendant's burden, the trial judge would be placed in the position of sua sponte interposing confrontation objections on the defendant's behalf—or risk knowingly presiding over a trial headed for apparent reversal on appeal. Such a state of affairs is obviously untenable. Trial judges should be loathe to interfere with the tactical decisions of trial counsel—the delegation of which lies at "the heart of the attorney-client relationship." *Taylor v. Illinois*, 484 U.S. 400, 417, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). As our state Supreme Court has noted, it would be "ill-advised to have judges . . . disrupt trial strategy with a poorly timed interjection." *State v.*

conduct may have precluded O'Cain from exercising his right to confrontation, because he lodged no objection to the admission of the victim's statements to the medical providers, the trial court had no opportunity to consider whether the doctrine of forfeiture by wrongdoing applied. It would be a strange rule of law that permitted a defendant to obtain a new trial under such circumstances.

[9] The Supreme Court has recognized, albeit in a different context, that a danger of not requiring a defendant to assert his claimed right in the trial court is to encourage the defendant to deliberately " 'game' the system"—forgoing an objection at trial, " 'wait[ing] to see if the [ultimate result] later st[rikes] him as satisfactory,' and then seeking a second bite at the apple by raising the claim [on appeal]." *Puckett v. United States*, 556 U.S. 129, 140, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009) (some alterations in original) (quoting *United States v. Vonn*, 535 U.S. 55, 73, 122 S. Ct. 1043, 152 L. Ed. 2d 90 (2002)).

*Thomas*, 128 Wn.2d 553, 560, 910 P.2d 475 (1996). Indeed, such interjections could impermissibly "intrude into the attorney-client relationship protected by the Sixth Amendment." *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 317, 868 P.2d 835 (1994).

¶33 As the United States Supreme Court has recognized in the related context of compulsory process, where the exercise of a constitutional right rests within a defendant's discretion, the state's interest in the "orderly conduct of a criminal trial" is sufficient to warrant the enforcement of firm rules of state trial court procedure. *Taylor*, 484 U.S. at 411. Thus, a defendant's right to "compel the presence and present the testimony of witnesses" pursuant to the compulsory process clause is subject to and limited by the reasonable procedural rules of state trial courts. *Taylor*, 484 U.S. at 410.

¶34 Similarly, a defendant is not deprived of his constitutional right to testify merely because the trial court does not inform him of the existence of that right—it is the responsibility of defense counsel to inform the defendant of the right to testify. *Thomas*, 128 Wn.2d at 561. Nor does a trial court err where it declines to compel defense counsel to engage in cross-examination. *United States v. Hines*, 696 F.2d 722, 731 (10th Cir. 1982). The Sixth Amendment guarantees the assistance of competent counsel to engage in such strategic decisions, *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and a trial court does not err by choosing not to intervene on the defendant's behalf. Instead, any error in the failure to assert such a trial right is defense counsel's alone—the remedy for which must be obtained pursuant to a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687-89.

¶35 We see no difference between the trial rights discussed above and the right to confrontation. As with decisions implicating trial strategy, the decision to raise a confrontation clause objection is a determination that is

reserved to the discretion of competent defense counsel. *See Gonzalez v. United States,* 553 U.S. 242, 256, 128 S. Ct. 1765, 170 L. Ed. 2d 616 (2008) (Scalia, J., concurring in the judgment) ("I doubt many think that the Sixth Amendment right to confront witnesses cannot be waived by counsel."). Indeed, in *Melendez-Diaz,* the Court speculated that defense counsel will often decline to raise a confrontation clause objection to proffered evidence due to "strategic considerations." 557 U.S. at 328. As the Oregon Supreme Court has observed, counsel's decision to forego a confrontation clause objection will often benefit the defendant:

> For instance, an adverse declarant's testimony may have a more persuasive effect in person than it would when relayed by a third party. Or, a defendant may not contest the testimony of the declarant, and, in that circumstance, defense counsel may wish to avoid the time and attention that in-person testimony would entail.

*State v. Steen,* 346 Or. 143, 155, 206 P.3d 614 (2009).

¶36 Accordingly, a trial court cannot reasonably be required to sua sponte raise a confrontation clause objection where defense counsel has determined that no such objection should be interposed or that cross-examination is unnecessary. Such a requirement would impose an impermissible burden on the attorney-client relationship protected by the Sixth Amendment. *Lord,* 123 Wn.2d at 317. Because the failure to raise a confrontation clause objection, if error, must be defense counsel's error alone, it is appropriate that the burden of exercising the right to confrontation is placed squarely upon the defendant.

¶37 Recent Washington cases are in accord with the rule espoused in *Melendez-Diaz* and *Bullcoming.* In *State v. Hayes,* 165 Wn. App. 507, 517, 265 P.3d 982 (2011), *petition for review filed,* No. 86893-0 (Wash. Jan. 10, 2012), we held that a defendant waived the right to confrontation where defense counsel "recognized the constitutional issue and deliberately failed to object to the evidence at trial." In that case, the record reflected that defense counsel objected to

other testimony on confrontation grounds and discussed the possibility of objecting to the victim's statements to medical providers on the same basis. However, counsel chose not to object to the latter testimony. We held that this constituted a "deliberate decision not to litigate" this issue that, accordingly, barred appellate review. *Hayes*, 165 Wn. App. at 520.

¶38  More recently, in *State v. Jasper*, 174 Wn.2d 96, 271 P.3d 876 (2012), our Supreme Court, in three consolidated cases, *State v. Jasper, State v. Moimoi,* and *State v. Cienfuegos*, ruled that *Melendez-Diaz* and *Bullcoming* required the court to overrule its decision in *State v. Kronich*, 160 Wn.2d 893, 161 P.3d 982 (2007). In both the *Jasper* and *Kronich* opinions, the Supreme Court dealt solely with the Sixth Amendment right to confrontation. Neither decision addressed its state constitutional counterpart.

¶39  As set forth by our Supreme Court:

> Prior to the United States Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), we held the confrontation clause does not forbid the admission of [certifications attesting to the existence or nonexistence of public records]. *State v. Kirkpatrick*, 160 Wn.2d 873, 161 P.3d 990 (2007); *State v. Kronich*, 160 Wn.2d 893, 161 P.3d 982 (2007). The teaching of *Melendez-Diaz*, however, is that certifications declaring the existence or nonexistence of public records are in fact testimonial statements, which may not be introduced into evidence absent confrontation. Accordingly, we now overrule our prior decisions to the extent they are contrary to United States Supreme Court precedent.

*Jasper*, 174 Wn.2d at 100.

¶40  Prior to reaching the merits of Moimoi's appeal, the court addressed the prosecution's contention that Moimoi had not adequately asserted his confrontation right at trial and that, therefore, appellate review was precluded. The court fully reviewed this contention and held that "Moimoi's objection was sufficient to apprise the court and counsel of the confrontation clause issue." *Jasper*, 174 Wn.2d at 108 n.2. Thus, the court ruled, full appellate review was warranted.

¶41 In the case at hand, O'Cain did not object to the admission of Robinson's out-of-court statements to her medical providers on confrontation clause grounds. Instead, he objected to the introduction of the 911 call evidence on confrontation clause grounds and objected to the introduction of Robinson's statements to the medical personnel on relevance grounds. Indeed, the record reflects that O'Cain's counsel reviewed applicable case law concerning the interplay of statements to medical providers and the confrontation clause prior to choosing the ground for objection. Against the weight of the authority set forth so far in this opinion, O'Cain now claims that he must be allowed to raise his confrontation clause claim for the first time on appeal.

¶42 The sole authority advanced by O'Cain in support of this proposition is a citation to the now-discredited *Kronich* decision. It is indeed true that in *Kronich*, a Sixth Amendment confrontation clause case, our Supreme Court allowed for appellate review of a confrontation clause claim even though Kronich had not asserted the claim in the trial court. *See Kronich*, 160 Wn.2d at 899-901. The basis for the court's ruling was RAP 2.5(a)(3), a rule of appellate procedure granting discretion to review manifest errors affecting constitutional rights, even when the claim of error was not raised in the trial court. *Kronich*, 160 Wn.2d at 899.

¶43 This holding of *Kronich*, it is now clear, is against the weight of recent, controlling authority and no longer properly states the law.

¶44 First, it is axiomatic that when the United States Supreme Court "has fulfilled its duty to interpret federal law, a state court may not contradict or fail to implement the rule so established." *Marmet Health Care Ctr., Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 1202, 182 L. Ed. 2d 42 (2012). The interpretation of the Sixth Amendment is an interpretation of federal law. In *Melendez-Diaz* and *Bullcoming*, the United States Supreme Court made clear

that the confrontation right is lost if it is not timely asserted at or before trial. A state court is without authority to "fail to implement th[is] rule." *Marmet Health Care*, 132 S. Ct. at 1202. Thus, a state appellate rule may not be utilized so as to undermine—even partially—a United States Supreme Court holding as to the scope or extent of a federal constitutional right. To the extent that *Kronich* does so, it is no longer controlling authority.

¶45 It appears that our Supreme Court has already recognized this state of affairs. In the *Jasper* decision, consistent with *Melendez-Diaz* and *Bullcoming*—and inconsistent with *Kronich*—the court examined defendant Moimoi's assertion of his confrontation right in the trial court to determine whether he had sufficiently invoked the right. This would have been entirely unnecessary if our Supreme Court was adhering to *Kronich*, rather than following *Melendez-Diaz* and *Bullcoming*, regarding the need to assert the right at trial.

¶46 Moreover, in *Jasper*, our Supreme Court held that the *Kronich* and *Kirkpatrick* decisions were overruled "to the extent they are contrary to United States Supreme Court precedent." 174 Wn.2d at 100. In holding that RAP 2.5(a)(3) allows a defendant to raise a confrontation clause claim for the first time on appeal, *Kronich* is "contrary to" *Melendez-Diaz* and *Bullcoming*. In this regard, then, it was overruled by *Jasper*.

¶47 A clear line of decisions—*Melendez-Diaz*, *Bullcoming*, *Jasper*, and *Hayes*—requires that a defendant raise a Sixth Amendment confrontation clause claim at or before trial or lose the benefit of the right. Here, O'Cain did not do so. Instead, he deliberately objected to evidence of the 911 call on confrontation grounds, while objecting to the admission of Robinson's statements to the medical personnel on relevance grounds. Having not invoked his confrontation right as to the statements made to the medical personnel, the right was lost. Appellate review of his claim is not warranted.

## III

¶48 Even were we to accept O'Cain's appellate counsel's entreaty that we review a trial court ruling never made—that Robinson's statements to her medical treatment providers would be admissible notwithstanding a Sixth Amendment confrontation clause objection—we would reach the same legal conclusion as that reached by O'Cain's trial counsel: the confrontation clause does not preclude the admission of statements made for purposes of medical diagnosis or treatment.

¶49 The confrontation clause bars the admission of testimonial hearsay statements where the declarant does not testify at trial and the defendant had no prior opportunity to confront the witness under oath. *Melendez-Diaz*, 557 U.S. at 310-11; *Crawford*, 541 U.S. at 53-54. While leaving "for another day any effort to spell out a comprehensive definition of 'testimonial,' " *Crawford*, 541 U.S. at 68, the Court did identify three acceptable formulations of the "core class" of testimonial statements. *Crawford*, 541 U.S. at 51. Testimonial statements may be (1) " '*ex parte* in-court testimony or its functional equivalent,' " *Crawford*, 541 U.S. at 51; (2) " 'extrajudicial statements . . . contained in formalized testimonial materials,' " *Crawford*, 541 U.S. at 51-52 (alteration in original) (quoting *White v. Illinois*, 502 U.S. 346, 365, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment)); or (3) " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Crawford*, 541 U.S. at 52.

¶50 On three occasions since the filing of the *Crawford* opinion, the United States Supreme Court has characterized statements made to medical providers for purposes of diagnosis or treatment as nontestimonial and, therefore, not subject to a confrontation clause objection. *Michigan v.*

*Bryant,* ___ U.S. ___, 131 S. Ct. 1143, 1157 n.9, 179 L. Ed. 2d 93 (2011) (statements made for purpose of medical diagnosis are "by their nature, made for a purpose other than use in a prosecution"); *Melendez-Diaz,* 557 U.S. at 312 n.2 (discussing cited cases: "[o]thers are simply irrelevant, since they involved medical reports created for treatment purposes, which would not be testimonial under our decision today"); *Giles,* 554 U.S. at 376 ("[O]nly *testimonial* statements are excluded by the Confrontation Clause. . . . [S]tatements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules.").

¶51 Washington authorities are in accord. *State v. Sandoval,* 137 Wn. App. 532, 538, 154 P.3d 271 (2007); *State v. Fisher,* 130 Wn. App. 1, 13, 108 P.3d 1262 (2005); *State v. Moses,* 129 Wn. App. 718, 730, 119 P.3d 906 (2005).[10]

¶52 In short, O'Cain's trial counsel was right: under the facts of this case, had the attorney objected to the admission of statements made by Robinson to her medical providers on the basis of the confrontation clause, the trial court would have correctly overruled the objection. The Sixth Amendment does not preclude such evidence.

---

[10] We note that the Supreme Court has given little guidance regarding the analytical framework that a trial court should employ in determining whether statements to nonstate actors were made for purposes of creating a substitute for in-court testimony. Indeed, the Court has "explicitly reserved the question of 'whether and when statements made to someone other than law enforcement personnel are "testimonial." ' " *Bryant,* 131 S. Ct. at 1155 n.3 (quoting *Davis v. Washington,* 547 U.S. 813, 823 n.2, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)). However, the Court addressed a related issue in the context of police interrogations. *Bryant,* 131 S. Ct. at 1156. Pursuant to its decision in *Davis,* where the police are involved in procuring an unconfronted statement, whether the statement is testimonial depends upon the "primary purpose" for the encounter in which the statement was acquired. 547 U.S. at 822. In *Bryant,* the Court explained that, to ascertain the primary purpose of a police interrogation, a court must "objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." 131 S. Ct. at 1156. "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Bryant,* 131 S. Ct. at 1156. This is an objective standard. Objectively viewed, a person giving information to a medical provider is typically doing so to benefit that person's health, not to afford a substitute for later in-court testimony.

## IV

¶53 O'Cain next asserts that the trial court erred by admitting evidence of Robinson's statements to her medical providers because that evidence should have been excluded pursuant to our state constitution's confrontation clause, article I, section 22 ("[i]n criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face"). A significant difficulty O'Cain encounters in making this assertion, however, is that he did not object on this basis at or before trial.

¶54 Given that *Kronich* concerned itself only with the Sixth Amendment, O'Cain cites to no authority in support of his contention that the state confrontation right is not lost in the same manner as is the federal confrontation right when no timely assertion of the right is made. To properly raise and establish the claim is, of course, his burden. *State v. Gunwall*, 106 Wn.2d 54, 62, 720 P.2d 808 (1986); *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986). "Recourse to our state constitution as an independent source for recognizing and protecting the individual rights of our citizens must spring not from pure intuition, but from a process that is at once articulable, reasonable and reasoned." *Gunwall*, 106 Wn.2d at 63. Thus, even though our Supreme Court has held that the confrontation clauses of the federal and state constitutions are subject to independent analyses, *State v. Pugh*, 167 Wn.2d 825, 835, 225 P.3d 892 (2009); *State v. Shafer*, 156 Wn.2d 381, 391, 128 P.3d 87 (2006), it remains the proponent's burden to establish that " 'the unique characteristics of the state constitutional provision and its prior interpretations actually compel a particular result.' " *State v. Chenoweth*, 160 Wn.2d 454, 463, 158 P.3d 595 (2007) (quoting *City of Seattle v. McCready*, 123 Wn.2d 260, 267, 868 P.2d 134 (1994)).

¶55 The same considerations that informed our analysis of the federal confrontation right apply with equal force in

the context of the state right to confrontation. The burdens to the state justice system are of no lesser magnitude because it is a state right, rather than a federal right, that is sought to be asserted for the first time on appeal. Nor can we see why a defendant should be permitted to stay silent at trial, bet on a verdict in his favor, and then raise his state confrontation claim on appeal—gaming the system in this manner is of no less concern where it is a state right that is asserted, as opposed to a federal right.

¶56 Moreover, because a trial court cannot be permitted to intrude upon the attorney-client relationship protected by the Sixth Amendment, any error in failing to raise a state confrontation objection must be defense counsel's alone—not the trial court's. As with the assertion of the federal confrontation right, the decision to confront a witness pursuant to our state's confrontation clause is a strategic trial decision that inheres in the attorney-client relationship. A trial court can no more intrude upon this relationship by *sua sponte* raising a state confrontation objection than it could were the objection grounded in federal law.

¶57 Finally, the wording of the Washington provision supports our conclusion. Article I, section 22 refers to the defendant's right "to meet the witnesses against him face to face." Nothing about these words lends credence to the notion that a defendant may choose *not* to confront the witness at trial and then seek a new trial based upon the absence of confrontation. Indeed, Washington's provision ("face to face"), even more strongly than does the federal provision, supports the conclusion that—for many reasons—the confrontation right is lost if it is not asserted at or before trial. Because he did not do so, O'Cain may not now seek appellate relief based upon this claim.

## V

¶58 Even had a proper objection been lodged, O'Cain has failed to advance any reasonable basis for us to conclude

that our state constitution precludes the admission of statements made for purposes of medical treatment in circumstances in which the federal constitution does not.

¶59 As set forth above, the federal and state confrontation clauses are subject to independent analyses. *Pugh*, 167 Wn.2d at 835; *Shafer*, 156 Wn.2d at 391. However, our Supreme Court has never explained the manner in which the state guaranty differs from its federal counterpart. Thus, to evaluate O'Cain's contention, the proper focus of our analysis must be on " 'whether the unique characteristics of the state constitutional provision and its prior interpretations actually compel a particular result.' " *Chenoweth*, 160 Wn.2d at 463 (quoting *McCready*, 123 Wn.2d at 267). To make this determination, we examine "the constitutional text, the historical treatment of the interest at stake as reflected in relevant case law and statutes, and the current implications of recognizing or not recognizing an interest." *Chenoweth*, 160 Wn.2d at 463.

¶60 The federal confrontation right was not made applicable to the states until 1965. *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). Thus, from the time of statehood—1889—until 1965, all Washington Supreme Court decisions dealing with the right of confrontation were necessarily interpreting or applying the state constitutional confrontation right. If, indeed, the purposes of the two clauses are significantly different, it would be reasonable to suppose that these differences would have manifested themselves during the 76 years of state Supreme Court decision making during which the Sixth Amendment was inapplicable.

¶61 No such differences in interpretation or application are found in the cases. Instead, two years before Fourteenth Amendment incorporation, our Supreme Court described the state of the law as follows:

> The right of confrontation is also guaranteed the accused in federal criminal proceedings under the provisions of the sixth amendment to the United States Constitution; however, no

case has been brought to our attention where this federal right has been carried over to the states by reason of the Fourteenth Amendment. *The purpose of the state and federal constitutional provisions pertaining to the right of confrontation appear to be the same in any event.*

*Habeas Corpus of Pettit v. Rhay,* 62 Wn.2d 515, 519-20, 383 P.2d 889 (1963) (emphasis added) (footnote omitted).

¶62 This state of the law did not change over the next two years. Thus, at the time that the federal confrontation right was made applicable to the states, the article I, section 22 right was being applied consonantly with the Sixth Amendment right by our Supreme Court. This remained the state of the case law for 33 years.

¶63 Then, in *State v. Foster,* 135 Wn.2d 441, 957 P.2d 712 (1998), a majority of our state's justices for the first time ruled that the right guaranteed by article I, section 22 is subject to an independent analysis. The fractured nature of the Supreme Court's decision in that case, however, left lower courts with little guidance as to what exactly that meant.

¶64 In *Foster,* our Supreme Court was called upon to determine "whether RCW 9A.44.150, which, in limited circumstances, permits a child witness to testify via one-way closed-circuit television rather than in the physical presence of the accused, violates the guarantees of the state or federal confrontation clause." 135 Wn.2d at 444. Opining that the state and federal confrontation clauses were coextensive and that the United States Supreme Court had already decided the question presented in favor of the government in *Maryland v. Craig,* 497 U.S. 836, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990), four justices joined a lead opinion, reasoning that Foster's conviction should be affirmed. 135 Wn.2d at 473. Opining that the state confrontation right is subject to an analysis independent of the corresponding federal right, and that the result of that analysis was that the article I, section 22 guaranty of "face-to-face" confrontation required an in-person "face-to-

face meeting between accuser and accused," 135 Wn.2d at 498 (Johnson, J., dissenting), four justices joined in a dissenting opinion, urging reversal of the conviction. 135 Wn.2d at 481-98 (Johnson, J., dissenting). Opining that an independent analysis of the state provision was called for, but that the result of that analysis was the same—in the context of the facts presented—under the state provision as it was under its federal counterpart, one justice filed an opinion "concurring in part, dissenting in part" that resulted in affirmance of the judgment. 135 Wn.2d at 473-81 (Alexander, J., concurring in part, dissenting in part). From all of this, lower courts learned that (1) Foster was guilty, (2) the state confrontation clause is subject to an independent analysis, and (3) little else.

¶65 Then, in *Shafer*, 156 Wn.2d 381, our Supreme Court, for the first time in a majority opinion, reaffirmed the "independent analysis" result from *Foster*. Although the court's discussion was brief, some guidance can be gained therefrom.

> While Shafer correctly observes that an independent analysis of article I, section 22 is required, we need not engage in such analysis here. We say this because we have previously concluded that RCW 9A.44.120 complies with article I, section 22. [*State v.*] *Ryan*, 103 Wn.2d [165,] 169-70[, 691 P.2d 197 (1984)]. . . . We adhere to that view now and hold that RCW 9A.44.120 is constitutional under article I, section 22.

*Shafer*, 156 Wn.2d at 391-92. It thus appears that our Supreme Court held out the *Ryan* decision as a manifestation of a correctly applied independent analysis.

¶66 In *Ryan*, the court addressed whether the child hearsay statute, RCW 9A.44.120, violated either the federal or state confrontation clauses. It applied identical analyses to each. Adhering to the then-existing federal approach for testing the admission of hearsay statements against confrontation rights, the court explained that our state's confrontation clause requires either (1) the production of the out-of-court declarant or (2) a demonstration of

witness unavailability coupled with assurances of the reliability of the out-of-court statement. 103 Wn.2d at 170 (citing *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980)). The court explained that statements admitted pursuant to the child hearsay statute did not violate the state confrontation clause because the statute required " 'that the time, content, and circumstances of the statement provide sufficient indicia of reliability.' " *Ryan*, 103 Wn.2d at 170 (quoting RCW 9A.44.120(1)). So long as an out-of-court statement was accompanied by sufficient assurances of reliability, the court held, "cross examination would be superfluous," and "the right of confrontation is not offended." *Ryan*, 103 Wn.2d at 175.

¶67 It was to this decision, and only to this decision, that our Supreme Court cited in again upholding the child hearsay statute as against a state confrontation clause claim in *Shafer*.

¶68 Several months after its *Shafer* decision, the Supreme Court appeared to reiterate the continued viability of the *Ryan* approach to state confrontation analysis:

> Borboa also argues that hearsay admitted under RCW 9A-.44.120 must "pass the rigorous scrutiny all hearsay is subjected to under the federal and state confrontation clauses." . . . In *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the United States Supreme Court distinguished between testimonial and nontestimonial evidence and held that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68. However, the Court observed that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law." *Id.*
>
> Borboa did not brief the issue of whether [the victim's] statements constituted testimonial evidence, but his counsel conceded at oral argument that [the victim's] statements were not testimonial. In *State v. Shafer*, 156 Wn.2d 381, 391, 128 P.3d 87 (2006), this court held that a child's spontaneous

statements to her mother were not testimonial and that the child's statements were admissible "if there is compliance with RCW 9A.44.120 and the [State v.] Ryan reliability factors." Thus, we need only consider whether [the victim's] statements were admissible under RCW 9A.44.120 and the reliability factors laid out in State v. Ryan, 103 Wn.2d 165, 691 P.2d 197 (1984).

State v. Borboa, 157 Wn.2d 108, 120 n.3, 135 P.3d 469 (2006) (some alterations in original) (citation omitted).

¶69 Thus, Shafer and Borboa, read together, appear to indicate that the Roberts reliability analysis, although discredited under federal constitutional analysis, remains a proper method by which to conduct an article I, section 22 confrontation analysis. If this is so, that analysis is of no help to O'Cain. This is because it is the presumed reliability of statements made to medical providers that provides the very basis for their widespread inclusion in federal and state evidentiary rules as an exception to the rule excluding hearsay. See In re Pers. Restraint of Grasso, 151 Wn.2d 1, 19, 84 P.3d 859 (2004).

¶70 On the other hand, if Shafer and Borboa cannot be so read, this also is of no assistance to O'Cain, as there is nothing in either opinion indicating that the admission of statements made to medical providers would be excluded as a result of the court's analysis in either case.

¶71 More recently, in Pugh, our Supreme Court considered whether our state confrontation clause should preclude the admission of several statements made in the course of a 911 telephone call. Examining the constitutional text, the court noted that the phrase "face to face" has not " 'been read literally, for to do so would result in eliminating all exceptions to the hearsay rule.' " Pugh, 167 Wn.2d at 836 (quoting Ryan, 103 Wn.2d at 169). The court then undertook a lengthy examination of the historical treatment of hearsay statements similar to those made to the 911 operator. The court explained that the "modern 'excited utterance' exception to the hearsay rule arose out of the 'res gestae'

doctrine, which was recognized at the time our state constitution was adopted." *Pugh*, 167 Wn.2d at 837. At the time of adoption, hearsay statements were "frequently admitted under the 'res gestae' exception notwithstanding the state constitution's confrontation clause." *Pugh*, 167 Wn.2d at 837. The court concluded that—because the statements made during the 911 call fell within the res gestae doctrine—such statements "simply do not implicate the right to confrontation under article I, section 22." *Pugh*, 167 Wn.2d at 843.

¶72 O'Cain contends that a similar analysis is required in this case and that, because statements for purposes of medical diagnosis would not have been admissible as substantive evidence at the time our state constitution was adopted, article I, section 22 precludes the admission of such unconfronted statements today. He is wrong.

¶73 As an initial matter, our Supreme Court's decision in *Pugh* does not stand for the proposition that a hearsay exception *must* have been well established at the time of statehood. Indeed, such a conclusion is foreclosed by the court's decisions in *Shafer* and *Borboa*, given that there was not a child hearsay statute at common law or in the Washington Territory in 1889.

¶74 Moreover, as the court noted in *Pugh*, " 'The privilege of confrontation has at all times had its recognized exceptions, and these exceptions are not static, but may be enlarged from time to time if there is no material departure from the reason underlying the constitutional mandate guaranteeing to the accused the right to confront the witnesses against him.' " 167 Wn.2d at 837 (alteration in original) (quoting *State v. Ortego*, 22 Wn.2d 552, 563, 157 P.2d 320 (1945)). Although the *Pugh* court found it dispositive that the res gestae doctrine was widely utilized at the time of the state constitution's adoption, this conclusion stands at most for the proposition that such a finding is *sufficient* to demonstrate that the hearsay exception at issue satisfies constitutional mandates. It does not indicate that such a finding is *necessary*.

¶75 Furthermore, insofar as O'Cain asserts that statements for purposes of medical treatment were never admissible as substantive evidence at the time our state constitution was drafted, O'Cain misperceives the law. The state constitution was adopted in 1889, and O'Cain has cited to no pre-1889 Washington territorial decision in which statements made for the purpose of medical treatment were held inadmissible pursuant to applicable rules of practice. Indeed, in *State v. Glass*, 5 Or. 73, 79 (1873), the Oregon Supreme Court recognized that the representations of a sick person regarding the nature of a malady, especially when made to a medical attendant, "are always received as original evidence." Such statements are "free from those objections which usually apply to the admission of hearsay" because these statements are "in the nature of a confession." *Glass*, 5 Or. at 79.

¶76 The Washington Territory split from the Oregon Territory in 1853. However, upon gaining statehood, Washington's Constitution, in article I, section 22, included a provision identical to the Oregon confrontation clause. *Foster*, 135 Wn.2d at 474 (Alexander, J., concurring in part, dissenting in part). This suggests that Washington's founders intended to adopt Oregon's law on confrontation at the time of Washington statehood. Oregon's confrontation clause did not, of course, mandate the exclusion of evidence of the type specifically approved of in *Glass*.

¶77 Indeed, our examination of the historic treatment of the confrontation right does not confirm the uniform preclusion at trial of statements to medical providers at the time of our State's founding that O'Cain suggests existed. Instead, the earliest Washington case calling the admissibility of such evidence into question was not filed until 33 years after statehood. *Estes v. Babcock*, 119 Wash. 270, 205 P. 12 (1922). That the Supreme Court once changed this evidentiary rule, and then changed it back several decades later, *see, e.g., Bertsch v. Brewer*, 97 Wn.2d 83, 640 P.2d 711 (1982), does not establish the argument that O'Cain seeks

to advance, especially given that the exceptions to the state confrontation clause have never been deemed to be "static." *Ortego*, 22 Wn.2d at 563.

¶78 Moreover, as our Supreme Court has indicated, in determining the scope of the state confrontation clause's protections, the proper inquiry is whether the admission of a hearsay statement amounts to a " 'material departure from the reason underlying the constitutional mandate guaranteeing to the accused the right to confront the witnesses against him.' " *Pugh*, 167 Wn.2d at 837 (quoting *Ortego*, 22 Wn.2d at 563). The court has long held that this right exists to prevent the admission of unconfronted statements "[w]here cross examination would serve to expose untrustworthiness or inaccuracy." *Ryan*, 103 Wn.2d at 175. Indeed, the court adhered to this approach in *Pugh*, explaining that "[t]he theory underlying admissibility of statements under the res gestae doctrine was that '[w]hat is said or done by participants under the immediate spur of a transaction becomes thus part of the transaction, because it is then the transaction that thus speaks.' " 167 Wn.2d at 837 (alteration in original) (internal quotation marks omitted) (quoting *State v. Aldrick*, 97 Wash. 593, 596, 166 P. 1130 (1917)). Such statements are inherently trustworthy, and " '[i]n such cases it is not necessary to examine as witnesses the persons who, as participators in the transaction, thus instinctively spoke or acted.' " *Pugh*, 167 Wn.2d at 837 (internal quotation marks omitted) (quoting *Aldrick*, 97 Wash. at 596). The court concluded that "[c]ross-examination is unnecessary when the action speaks for itself." *Pugh*, 167 Wn.2d at 838.

¶79 The substantive guaranty of our state's confrontation clause is likewise satisfied when statements are made for purposes of medical treatment. Such statements are admissible as an exception to the hearsay rule based upon a belief that the declarant's desire for proper diagnosis and treatment supplies the necessary element of trustworthiness. *State v. Butler*, 53 Wn. App. 214, 220, 766 P.2d 505

(1989) (quoting *United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985)). "[R]eliability is assured by the likelihood that the patient believes that the effectiveness of the treatment depends on the accuracy of the information provided to the doctor, which may be termed a 'selfish treatment motivation.' " 2 McCORMICK ON EVIDENCE § 277, at 233 (John W. Strong ed., 5th ed. 1999) (footnote omitted). Just as "[c]ross-examination is unnecessary when the action speaks for itself," *Pugh*, 167 Wn.2d at 838, the inherent reliability of statements made for purposes of medical diagnosis also makes "cross examination . . . superfluous." *Ryan*, 103 Wn.2d at 175.

¶80 Here, Robinson's statements to medical personnel were accompanied by sufficient assurances of reliability to pass state constitutional muster. Robinson's statements were reasonably pertinent to her diagnosis and treatment. At the time of her statements, the extent of Robinson's injuries was unknown. It was of vital importance for medical staff to determine the cause of her injuries in order to decide what diagnostic tests to perform. As the physician's assistant who treated Robinson explained, the identity of an attacker is often relevant for determining whether an additional, "inconspicuous injury . . . with a severe mechanism" may be present. Robinson is likely to have believed that proper treatment of her injuries was dependent upon the truthfulness and accuracy of her answers. Her own self-interest supplied the necessary element of reliability. Because these statements were inherently reliable, cross-examination of Robinson was unnecessary to "expose untrustworthiness or inaccuracy." *Ryan*, 103 Wn.2d at 175. The admission of her statements did not violate the substantive guaranty of our state constitution's confrontation clause.

¶81 We do not see that the weight of authority supports a conclusion that the admission of statements to medical personnel implicates the state confrontation clause.

## VI

¶82 Finally, O'Cain contends that the evidence adduced at his trial was insufficient to support the jury's verdict finding him guilty of felony harassment. The State concedes this to be true. We accept this concession. Accordingly, we must remand this matter to the trial court for vacation of that conviction and reimposition of judgment and sentence.[11]

¶83 Affirmed in part, reversed in part, and remanded.

BECKER and ELLINGTON, JJ., concur.

---

[11] Given that the felony harassment conviction is to be vacated on remand, we need not address O'Cain's remaining claims of error (double jeopardy and same criminal conduct).