STEPHENS, J. (concurring)
¶45 I agree with the majority's holding on the right to self-representation and I concur fully in its analysis of that claim. While I also agree that Michael Burns's unpreserved confrontation clause claim is not re viewable on its merits, I strongly disagree with the majority's decision to adopt the analysis from State v. O'Cain, 169 Wash. App. 228, 279 P.3d 926 (2012), in rejecting that claim.
¶46 O'Cain articulated the novel theory, not advanced in any of the briefing before that court, that the United States Supreme Court's decision in Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), overrides our standard for reviewing unpreserved constitutional claims under RAP 2.5(a)(3) with respect to confrontation clause claims. O'Cain, 169 Wash. App. at 235-48, 279 P.3d 926.[1] As explained below, this theory misunderstands Melendez-Diaz and violates core principles of federalism. Instead of rejecting O'Cain's flawed analysis, the majority embraces it and carves out a confrontation clause exception to RAP 2.5(a)(3) based on a confusing notion of "waiver" that is contrary to the rule's very purpose. It claims this approach furthers judicial efficiency and finality, but our established RAP 2.5(a)(3) analysis already addresses these prudential concerns by limiting review of new claims on appeal to manifest error affecting a constitutional right. I would adhere to that sound analysis.
*213 I. O'Cain ' s Analysis, Which the Majority Affirms, Fundamentally Misunderstands the United States Supreme Court's Decision in Melendez-Diaz and Violates Core Principles of Federalism
¶47 The Court of Appeals in O'Cain refused to apply RAP 2.5(a)(3) because it wrongly believed Melendez-Diaz eclipsed our state scope of review rule. The question presented in Melendez-Diaz was whether forensic analyst affidavits (in that case, certifying the results of a lab test indicating the presence of cocaine) were " 'testimonial' " for purposes of the Sixth Amendment right of confrontation, triggering the defendant's right to cross-examine the affiant. 557 U.S. at 307, 129 S.Ct. 2527 ; U.S. CONST . amend. VI. A *1194 majority concluded the answer was yes, id. at 329, 129 S.Ct. 2527, and also responded to a lengthy dissent that argued the criminal justice system would grind to a halt under the weight of so much confrontation, id. at 341, 129 S.Ct. 2527 (Kennedy, J., dissenting). The dissent predicted a cumbersome and expensive new reality where expert witnesses would need to present in-court testimony about undisputed facts:
As matters stood before today's opinion, analysts already spent considerable time appearing as witnesses in those few cases where the defendant, unlike petitioner ... contested the analyst's result and subpoenaed the analyst. ... By requiring analysts also to appear in the far greater number of cases where defendants do not dispute the analyst's result, the Court imposes enormous costs on the administration of justice.
Id. Addressing this practical concern, the Melendez-Diaz majority explained that its holding was not likely to clog trial court proceedings with undisputed expert testimony. It noted that states often, for scheduling purposes, require defendants to raise confrontation clause objections to expert affidavits well before trial and that, in any event, defendants often deliberately "waive" such objections for strategic reasons (e.g., to avoid highlighting damaging facts). Id. at 327-28, 129 S.Ct. 2527.
*214 ¶48 This portion of Melendez-Diaz did not announce any new holding. It simply recognized that states may, consistent with what today's majority properly calls "the minimum requirements of the Sixth Amendment," majority at 1191 (emphasis added), adopt procedural notice-and-demand rules requiring defendants to preserve confrontation clause error. See Melendez-Diaz, 557 U.S. at 327, 129 S.Ct. 2527 ("States are free to adopt procedural rules governing objections."). That uncontroversial principle was not disputed in Melendez-Diaz, was not disputed in O'Cain, and is not disputed here. See majority at 1192 ("Applying ER 103 and requiring a defendant to object at trial ... is ... consistent with the discovery and disclosure process of criminal procedure ... [and] giv[es] the appellate courts an actual trial court decision to review.").
¶49 The Court of Appeals' mistake in O'Cain -embraced by the majority today-was to take these undisputed background principles and misconstrue them as a federal constitutional restriction on the scope of state appellate review:
The interpretation of the Sixth Amendment is an interpretation of federal law. In Melendez-Diaz ... the United States Supreme Court made clear that the confrontation right is lost if it is not timely asserted at or before trial .... [A] state appellate rule may not be utilized so as to undermine-even partially-a United States Supreme Court holding as to the scope or extent of a federal constitutional right.
169 Wash. App. at 247-48, 279 P.3d 926.
¶50 This analysis reflects two fundamental errors.
¶51 First, it reads into Melendez-Diaz a holding that the Sixth Amendment right of confrontation is forever "lost" if it is not asserted "at or before trial." O'Cain, 169 Wn. App. at 248, 279 P.3d 926. But Melendez-Diaz says only that states may adopt procedural rules regulating the preservation of confrontation clause error. 557 U.S. at 327, 129 S.Ct. 2527. It does not hold that, unless such procedural rules are strictly observed, the Sixth *215 Amendment right of confrontation somehow evaporates or fails to attach at all. Indeed, if that were the case, then unpreserved confrontation clause claims would never be reviewable in federal appellate courts post- Melendez-Diaz . But, of course, they are. E.g. , United States v. Charles, 722 F.3d 1319, 1322 (11th Cir. 2013) (unpreserved confrontation clause claim reviewed on appeal for plain error); United States v. Martinez, 588 F.3d 301,313 (6th Cir. 2009) (same); United States v. Matus-Zayas, 655 F.3d 1092, 1101-03 (9th Cir. 2011) (trial court committed "plain error" in violation of confrontation clause protections, even absent objection by defendant, when it admitted depositions by witnesses government had not shown to be "unavailable" for live testimony); see also United States v. Roach, 896 F.3d 1185, 1194 (10th Cir. 2018), cert. denied, --- U.S. ----, 139 S.Ct. 845, 202 L.Ed.2d 612 (2019) (appellant waived confrontation clause *1195 arguments on appeal because alleged error was unpreserved and appellant failed to argue plain error).[2] Such claims remain subject to Federal Rule of Criminal Procedure (FRCrP) 52(b), which, similar to RAP 2.5(a)(3), facilitates relief for certain unpreserved yet obvious errors. Nothing in Melendez-Diaz calls into question these procedural rules allowing for limited appellate review of unpreserved errors.[3] *216 ¶52 O'Cain's second error, closely related to the first, is its conclusion that because states may require defendants to preserve confrontation clause error by making contemporaneous objections at trial, they therefore must enforce that procedural requirement on appeal without exception for manifest error. 169 Wn. App. at 248, 279 P.3d 926 ("a state appellate rule may not be utilized so as to undermine ... a United States Supreme Court holding as to the scope or extent of a federal constitutional right"). This conclusion violates basic tenets of federalism and sells short the power of states to govern their own court proceedings. Contrary to O'Cain's reasoning, states may always afford more protections for criminal defendants than the Fourteenth Amendment requires. E.g. , California v. Ramos , 463 U.S. 992, 1013-14, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) ("[i]t is elemental that States are free to provide greater protections in their criminal justice system than the Federal Constitution requires"). O'Cain ignores this fundamental constitutional principle and misreads Melendez-Diaz as holding that the Sixth Amendment somehow prohibits Washington courts from applying RAP 2.5(a)(3) to confrontation clause claims.
¶53 This holding is so deeply flawed that Division One walked it back just a month after O'Cain was published, observing that RAP 2.5(a) is "[a]rguably" the kind of procedural rule contemplated in Melendez-Diaz, through which states may address preservation of confrontation clause error. State v. Fraser, 170 Wash. App. 13, 26-27, 282 P.3d 152 (2012). In fact, this is more than arguable, it is indisputable. Nothing in the federal constitution prohibits Washington courts from addressing "manifest" confrontation clause error under RAP 2.5(a)(3) just like any other type of manifest *217 constitutional error. Division Two has recognized as much and expressly rejected O'Cain's misguided "waiver" analysis. State v. Hart, 195 Wash. App. 449, 458 n.3, 381 P.3d 142 (2016) (acknowledging " O'Cain ['s] ... sound reasoning for imposing [strict preservation of confrontation clause error] requirement" but holding Melendez-Diaz does not preclude application of RAP 2.5(a)(3) to confrontation clause claims). As evidenced by this case, however, the O'Cain analysis has persisted in Division One. State v. Burns, No. 75537-4-1, slip op. at 13, 2018 WL 418759 (Wash. Ct. App. Jan. 16, 2018) (unpublished) ("Because Burns did not raise the issue of confrontation below, he *1196 may not now seek appellate relief on this claim." (citing O'Cain, 169 Wash. App. at 252, 279 P.3d 926 ) ), http://www.courts.wa.gov/opinions/pdf/755374.pdf; see also, e.g., State v. Sage, 1 Wash. App. 2d 685, 702-03, 407 P.3d 359 (2017), review denied, 191 Wash.2d 1007, 424 P.3d 1210 (2018) (unpreserved confrontation clause objection per se unreviewable under O'Cain ).
¶54 We should take this opportunity to explicitly reject O'Cain's flawed analysis. Unfortunately, the majority champions it. Majority at 1192 ("We agree with the O'Cain analysis of Melendez-Diaz ... and explicitly adopt a requirement that a defendant raise an objection at trial or waive the right of confrontation."). As discussed below, this misstep sows significant confusion and inconsistency into our RAP 2.5(a)(3) jurisprudence.
II. By Endorsing O'Cain's Confusing Concept of "Waiver," the Majority Carves Out a Confrontation Clause Exception to RAP 2.5(a) That Disregards the Rule's Logic and Furthers No Legitimate Policy
¶55 Noting the post- O'Cain split in the Court of Appeals, the majority misframes the question presented here as involving a choice between "waiver by failure to object" ( O'Cain 's approach) and "manifest constitutional error under RAP 2.5(a)(3)." Majority at 1191-93. But, there is no choice to be made. O'Cain 's ironclad concept of "waiver" depends entirely on the misreading of Melendez-Diaz discussed above, when in fact RAP 2.5(a)(3) exists for the very *218 purpose of assessing whether an appellate court will review a claim that was unpreserved below.
¶56 In cases discussing RAP 2.5(a)(3), we have sometimes said that, by failing to lodge a contemporaneous objection at trial, a defendant "waives" the right to raise the alleged error on appeal. But we have never held that a defendant waives the right to a RAP 2.5(a)(3) analysis altogether. On the contrary, we have always made clear that a party waives an issue for appeal only because that party fails to satisfy RAP 2.5(a)(3) 's requirements. E.g. , State v. Robinson, 171 Wash.2d 292, 304, 253 P.3d 84 (2011) ("The general rule in Washington is that a party's failure to raise an issue at trial waives the issue on appeal unless the party can show the presence of a ' "manifest error affecting a constitutional right." ' " (quoting State v. Kirwin, 165 Wash.2d 818, 823, 203 P.3d 1044 (2009) (quoting State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995) ) ) ); State v. McNeal, 145 Wash.2d 352, 361-62, 37 P.3d 280 (2002) ("it cannot be said that the apparent inconsistency of the verdicts is a manifest error affecting a constitutional right ...[;] therefore, [the defendant] waived his right to challenge the verdict by failing to raise the issue before the jury was discharged"). While this use of the term "waiver" may be imprecise,[4] it is longstanding and consistent: in the context of RAP 2.5(a)(3), saying that a defendant "waived" the right to appeal is simply another way of saying the defendant did not meet the rule's prerequisites to review of unpreserved error.
¶57 The majority's novel conclusion drawn from O'Cain -that by failing to preserve an alleged confrontation clause error a defendant forever "waives" any possibility of appellate review under RAP 2.5(a)(3) -cancels out the very *219 purpose of the rule. By design, RAP 2.5(a)(3) applies specifically and only to unpreserved trial error. RAP 2.5(a) (governing "Errors Raised for First Time on Review"); see also State v. Lamar, 180 Wash.2d 576,583, 327 P.3d 46 (2014) ( RAP 2.5(a)(3)"serves a gatekeeping function that will bar review of [most] claimed constitutional errors to which no exception was made"); State v. WWJ Corp., 138 Wash.2d 595, 602, 980 P.2d 1257 (1999) (" RAP 2.5(a)(3) is an exception to the general rule that parties cannot raise new arguments on appeal"). It defies the logic of the rule to refuse to apply it on the basis of nothing more than the defendant's failure to object, i.e., "waiver," below.
¶58 Perhaps recognizing that its holding is at odds with RAP 2.5(a) 's plain language, the *1197 majority attempts to justify it with policy reasoning. However, none of this reasoning withstands scrutiny.
¶59 First, the majority claims that its approach "furthers consistency between cases." Majority at 1191. I fail to see how. Before today's holding we articulated a consistent RAP 2.5(a)(3) analysis applicable to unpreserved constitutional claims of all kinds, including claims of confrontation clause error, e.g., State v. Kronich, 160 Wash.2d 893, 900-01, 161 P.3d 982 (2007), overruled on other grounds by State v. Jasper, 174 Wash.2d 96, 271 P.3d 876 (2012). The majority now introduces a confusing new concept of "waiver" into this analysis and adopts a special, confrontation-clause-specific exception to RAP 2.5(a)(3). This makes our scope of review jurisprudence more varied and unpredictable, not more consistent.
¶60 Second, the majority appeals generally to the value of enforcing contemporaneous objection requirements such as ER 103 : timely objections create a record sufficient for appellate review and relieve trial courts from the burden of raising issues sua sponte. Majority at 1192. Of course these are important concerns, but the majority's reliance on them proves too much. ER 103 applies to all evidentiary objections. See *220 State v. Blake, 172 Wash. App. 515, 529, 298 P.3d 769 (2012). And timely objections are valuable in all contexts-there is no reason to enforce preservation of error rules more strictly where the confrontation clause is concerned. Besides, our RAP 2.5(a)(3) analysis already addresses these policy concerns through its "manifest error" requirement. As is evident from the analysis of Burns's claim below, that analysis imposes significant limitations on appellate review, assuring that parties fully appreciate the importance of raising contemporary objections, including those based on the confrontation clause. Thus, there is no policy justification for carving out a confrontation clause exception to RAP 2.5(a)(3) ; it needlessly limits an appellate court's ability to do justice under the rule.
¶61 Finally, the majority implies that Melendez-Diaz and this court's decision in Jasper, 174 Wash.2d 96, 271 P.3d 876, "undermined" our application of RAP 2.5(a)(3) to an unpreserved confrontation clause claim in Kronich, 160 Wash.2d 893, 161 P.3d 982. See majority at 1191. Not so. In Kronich, we held that affidavits certifying the status of a defendant's driving privilege were nontestimonial for purposes of confrontation clause protections. 160 Wash.2d at 902-04, 161 P.3d 982. We also held that the appellant could raise his confrontation clause claim for the first time on appeal because he had satisfied RAP 2.5(a)(3) 's requirements ("manifest error affecting a constitutional right"). Id. at 901, 161 P.3d 982. In Jasper, we recognized that Melendez-Diaz had abrogated Kronich 's holding on the testimonial nature of affidavit certifications, but we did not question its holding on RAP 2.5(a)(3). 174 Wash.2d at 111-16, 271 P.3d 876. There is no discussion in either Melendez-Diaz or Jasper about RAP 2.5(a)(3) specifically, or appellate review of unpreserved error generally, because in each of those cases the appellants preserved their claims through objections at trial. Melendez-Diaz , 557 U.S. at 309, 129 S.Ct. 2527 ; Jasper, 174 Wash.2d at 108 n.2, 271 P.3d 876.
¶62 In sum, the majority's new concept of "waiver"-which creates a unique confrontation clause exception to our standard RAP 2.5(a)(3) analysis-introduces significant confusion into our scope of review jurisprudence. None *221 of the majority's policy arguments justify this outcome. In determining whether to review Burns's unpreserved confrontation clause claim, we should adhere to our long-standing RAP 2.5(a)(3) analysis.
III. Burns Does Not Demonstrate the Manifest Error Required for Review of His Confrontation Clause Claim under RAP 2.5(a)(3)
¶63 RAP 2.5(a)(3) provides that "a party may raise ... for the first time in the appellate court ... manifest error affecting a constitutional right." Therefore, before we will reach the merits of any unpreserved claim under that rule, we must be satisfied both that the claim is "truly of a constitutional magnitude" and that the alleged trial court error is "manifest" in the record. State v. Kalebaugh, 183 Wash.2d 578, 583, 355 P.3d 253 (2015) (citing State v. O'Hara, 167 Wash.2d 91, 98, 217 P.3d 756 (2009) ). The purpose of this rule is to encourage timely objections while also providing a remedy for *1198 unpreserved, yet obvious errors that "result in serious injustice to an accused." Id. at 583, 355 P.3d 253.
¶64 Under our long-standing precedent, an error is not "manifest," for purposes of RAP 2.5(a)(3), unless there is " 'a plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' " WWJ Corp., 138 Wash.2d at 603, 980 P.2d 1257 (quoting State v. Lynn , 67 Wash. App. 339, 345, 835 P.2d 251 (1992) ). Kronich acknowledged this standard, and, as noted above, nothing in Jasper or Melendez-Diaz undermines Kronich's application of RAP 2.5(a)(3) to unpreserved confrontation clause error. However, one aspect of Kronich 's RAP 2.5(a)(3) analysis-specifically, its definition of the "manifest error" necessary to trigger review-has been undermined by subsequent cases applying that rule in other contexts. The court in Kronich concluded that the unpreserved error was "manifest" because, "had [the appellant] successfully raised his confrontation clause challenge at trial, the [evidence at issue] would have been excluded." 160 Wash.2d at 900, 161 P.3d 982 (emphasis *222 added). In other words, the Kronich court concluded that if indeed the confrontation clause claim had merit, then the unpreserved error was "manifest" under RAP 2.5(a)(3). But this analysis is inconsistent with our more recent cases on "manifest error."
¶65 In recent cases we have explained that, " 'to determine whether an error is practical and identifiable, [i.e., manifest,] the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error.' " Kalebaugh, 183 Wash.2d at 584, 355 P.3d 253 (quoting O'Hara, 167 Wash.2d at 100, 217 P.3d 756 ). And we have said that "[i]t is not the role of an appellate court on direct appeal to address claims where the trial court could not have foreseen the potential error or where the prosecutor or trial counsel could have been justified in their actions or failure to object." O'Hara, 167 Wash.2d at 100, 217 P.3d 756. Therefore, to demonstrate that an unpreserved error is "manifest" for purposes of RAP 2.5(a)(3), the appellant must show that the trial court could have prevented the error, notwithstanding counsel's failure to object. See Kalebaugh, 183 Wash.2d at 584, 355 P.3d 253 (unobjected jury instruction on "reasonable doubt" standard was "manifest error" because trial court should have known it misstated the law). At a minimum, this standard ensures that there is an adequate record for determining the merits of the unpreserved claim on appeal. See O'Hara, 167 Wash.2d at 99-100, 217 P.3d 756 ("manifest error" inquiry must focus on "whether the error is so obvious on the record that the error warrants appellate review"); State v. Kirkman, 159 Wash.2d 918, 935, 155 P.3d 125 (2007) ("If the trial record is insufficient to determine the merits of the constitutional claim, the error is not manifest and review is not warranted.").
¶66 Burns makes no attempt to meet this standard. Instead, he relies solely on Kronich to conclude that an unpreserved confrontation clause error is always "manifest" under RAP 2.5(a)(3). Suppl. Br. of Pet'r at 10 (omitting any discussion of the trial record relevant to his confrontation *223 clause claim and arguing instead only that " Kronich demonstrates ... the issue raised by Mr. Burns was constitutional and manifest"). However, unpreserved confrontation clause claims are not per se "manifest" under RAP 2.5(a)(3). Here, for example, the State argues that trial counsel had tactical reasons to forgo a confrontation clause objection to Officer Kent Poortinga's hearsay testimony. Indeed, counsel elicited some of that testimony on cross-examination. A tactical failure to object is not a "manifest error" under RAP 2.5(a)(3), Kirkman, 159 Wash.2d at 937, 155 P.3d 125, and yet Burns makes no attempt to answer the State's argument. Instead, he asserts without analysis that, "had an objection been lodged, the trial court could have excluded the statements, thus avoiding the constitutional error." Pet. for Review at 14-15 (emphasis added). But that misapprehends our RAP 2.5(a)(3) manifest error analysis. An objection was not lodged, and thus, under a proper analysis, we ask whether the trial court could have corrected the error sua sponte, given what it knew at the time. Kalebaugh, 183 Wash.2d at 584, 355 P.3d 253 (quoting O'Hara, 167 Wash.2d at 100, 217 P.3d 756 ). *1199 ¶67 Under the RAP 2.5(a)(3) analysis that has evolved post- Kronich, Burns does not demonstrate the "manifest error" required for review. On this basis, I concur in the majority's decision not to address the merits of Burns's unpreserved confrontation clause claim.
CONCLUSION
¶68 Applying RAP 2.5(a)(3), I would hold that Burns has not demonstrated grounds to reach the merits of his unpreserved claim. That narrow holding is all that is needed to resolve this case.
¶69 Unfortunately, the majority goes much further. Embracing the flawed analysis in O'Cain, it holds that no defendant raising an unpreserved confrontation clause claim can ever demonstrate manifest error sufficient to sustain appellate review. Indeed, the majority suggests no *224 error even exists in the absence of a contemporaneous trial objection. This holding misreads Melendez-Diaz and sows needless confusion into our jurisprudence by making unpreserved confrontation clause error uniquely unreviewable, even when it results in "serious injustice to an accused." Kalebaugh, 183 Wash.2d at 583, 355 P.3d 253. I would adhere to RAP 2.5(a)(3) and retain the appellate courts' ability to address situations of serious injustice.
Madsen, J.
Gordon McCloud, J.
Wiggins, J.

See Br. Of Resp't at 11, State v. O'Cain, No. 65735-6-I (Wash. Ct. App.), reprinted in 2 Briefs 169 Wash. App. 228, 279 P.3d 926 (2011) (conceding that a confrontation clause claim may be raised for the first time on appeal if the requirements of RAP 2.5(a)(3) are met). The State cited Melendez-Diaz only once in its briefing in O'Cain and then solely for the point that statements to medical treatment providers are nontestimonial. Id. at 12.

The majority makes no attempt at all to reconcile O'Cain 's reading of Melendez-Diaz -according to which the Sixth Amendment prohibits appellate review of unpreserved confrontation clause claims-with these cases. Instead, it shrugs off the discrepancy and concludes that, even if O'Cain got this wrong, this means only that "we are free to interpret our rules to require a defendant to object ... at trial or waive [the confrontation] right on appeal, as we do in this opinion." Majority at 1191-92 n.4. But the majority is not merely interpreting our rules, it is crafting a brand new, confrontation-clause-specific rule in direct contradiction to RAP 2.5(a)(3) 's plain language. A judicial opinion should not be used to bypass normal rule making procedure, as that deprives us of the benefit of valuable perspectives. In re Pers. Restraint of Carlstad, 150 Wash.2d 583, 592 n.4, 80 P.3d 587 (2003) (even if nonexistent rule is desirable, "the rule should be adopted through the normal rule-making process[, which] ... enables all interested and affected parties to participate").

United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("[FRCrP] 52(b), which governs on appeal from criminal proceedings, provides a court of appeals a limited power to correct errors that were forfeited because not timely raised in district court."). FRCrP 52(b) and RAP 2.5(a)(3) are not identical in the scope of relief they afford. For example, under FRCrP 52(b) the appellate court may review only those unpreserved errors that meet the rule's criteria (plain error affecting substantial rights), Olano, 507 U.S. at 732-35, 113 S.Ct. 1770, while under RAP 2.5(a)(3) an appellate court must review any error that meets the rule's criteria (manifest error affecting a constitutional right). But, distinctions aside, FRCrP 52(b) and RAP 2.5(a)(3) are similar in that they provide a mechanism for appellate review of unpreserved error-including unpreserved confrontation clause error.

See State v. Sublett, 176 Wash.2d 58, 154 & n.49, 292 P.3d 715 (2012) (Wiggins, J., concurring) (preferring the term "forfeiture" to describe a party's failure to timely assert a right, and arguing that "waiver" denotes " 'the "intentional relinquishment or abandonment of a known right" ' ") (quoting Olano, 507 U.S. at 733-34, 113 S.Ct. 1770 (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ) ).